RODMAN CHEMICAL CO. v. DEEDS COMMERCIAL LABORATORIES.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1919.)

No. 2643.

1. PATENTS ⏤328—PRIOR USE.
   Rodman patent, No. 1,076,453, for a method for making case-hardening material, *held* not invalid on the ground of prior use.

2. PATENTS ⏤328—INFRINGEMENT; CASE-HARDENING MATERIAL.
   The Rodman patent, No. 1,076,453, for a case-hardening material, which material was composed of carbonaceous pellets, *held* infringed.

3. PATENTS ⏤328—ANTICIPATION.
   The Rodman patent, No. 1,076,453, for a case-hardening material, claims 1, 7, 17, 22, and 25, consisting of pellets of carbon, etc., *held* not anticipated, and to show invention.

4. PATENTS ⏤118—VAGUE AND INCOMPLETE CLAIM INVALID.
   The claim of a patent, which is incomplete and vague, because omitting an essential element, is invalid.

Appeal from the District Court of the United States for the District of Indiana.

Bill by the Rodman Chemical Company against the Deeds Commercial Laboratories. From a decree dismissing the bill, complainant appeals. Reversed and remanded.

Fred W. Winter, of Pittsburgh, Pa., for appellant.

V. H. Lockwood, of Indianapolis, Ind., for appellee.

Before BAKER, MACK, and EVANS, Circuit Judges.

MACK, Circuit Judge. Letters patent No. 1,076,453, granted to appellant, as assignee of Hugh Rodman, on October 21, 1913, are entitled as for a "method of making case-hardening material." In the specifications, the invention, it is stated, "relates to improved methods of manufacturing carbonizing material for dry packing." The product sought to be obtained by the patented method was small masses or pebbles of carbonizing material, made out of what was theretofore largely waste dust. The advantage over other carbonizing products was its reduced cost, due to the utilization of a waste product, its greater thermal conductivity, easier handling over powdered or dusty carbonizing materials, and especially its retention of identity under heat.

While the preferred method indicated in the specifications necessitated the use of powdered coking coal, and made the internal coking thereof a step in the method of manufacturing the product, the inventor specified also the use of powdered charcoal as a substitute, with the omission of coking as a necessary step in the method.

Claims 1, 7, 10, 17, 22, and 25 are in suit. Claim 1 reads as follows:

1. The method of adapting finely divided material for use as carbonizing material, which consists in mixing the material with a binding agent and forming small masses, which will maintain their identities when heated.

Claim 22 differs only in describing the binding agent as "tacky," and claim 25 by adding after the words "binding agent" the phrase "such as molasses."

In claim 7, the method of forming "small rounded pebbles," instead of "small masses," is stated as "tumbling to form."

In claim 10, the finely divided material is limited by adding "for dry packing," and in lieu of the final clause in claim 1, "forming * * * heated," there is substituted, "separating the resulting mass into relatively small masses of appreciable size."

Claim 17 reads:

17. The method of preparing carbonizing material which consists in fashioning finely divided material into substantially smooth-surfaced pebbles and in then applying heat thereto.

A bill to enjoin alleged infringement was dismissed for want of equity. No opinion was filed. The defenses relied upon were prior use, anticipation and invalidity for lack of invention, and noninfringement.

[1] 1. *Prior Use.*—While there is some evidence tending to show use and sales of this product more than two years before the application for patent was filed, not only does it fall far short of the clear proof required to sustain this defense, but we are satisfied that it is clearly and conclusively controverted. Plaintiff manufactured successively and contemporaneously several kinds of carbonizing materials; the product from the method of the patent in suit was the final and most successful one; it differed both in substance, in form, and in quality from the others; each marked an advancing step in the manufacture of a valuable commercial product; each was produced by a definitely distinct method. The proof is clear that neither the method in suit nor the product thereof was used by plaintiff prior to 1912.

[2] 2. *Infringement.*—Concededly there is infringement, except as to claim 7, if the claims are to be broadly interpreted. Defendant uses charred carbonaceous materials in powdered form and a solution of molasses and water; they are mixed in a mixing machine; small balls or pills are thereby produced. The proper sized ones are first air-dried, and are then dried in a revolving drum with heat applied. While the alleged purpose of the final heating is to dry out excess moisture, the effect thereof in this revolving drum is to reduce the size of the pills and to compact and harden them. Whether this be technically a "tumbling" operation or not, it is the clear equivalent thereof; the sole purpose of tumbling is to compact and harden the pill; whether this be accomplished in one operation, during their formation as pills, or in two, is immaterial. As heretofore stated, plaintiff is not confined to the use of such carbonaceous material as requires coking; defendant's use of coked or charred powder as against plaintiff's preferential method of using coking coal dust does not therefore avoid infringement. While some carbonaceous materials, like charred leather, require no special preparation, others, like charcoal, coke, or coal, require for commercial use at any practicable temperature the addition of a chemical, called energizer, such as lime, in order to activate the carbon. But the patent is not limited to the use of a carbonaceous material requiring the addition of an energizer; the carbonizing material in each of the claims covers as well carbonaceous

materials, such as charred leather or corncobs used by defendant, having in themselves sufficient energy to activate the carbon.

[3] 3. *Anticipation and Want of Invention.*—Case hardening is a species of carbonizing. If it be desired to harden the metal throughout, a carbon is dissolved into the molten metal. If, however, only the surface is to be hardened, so-called case hardening, the finished product is packed in dry carbonizing material; the box is sealed and placed in a red hot furnace for several hours; the carbon gases produced are absorbed only by the surface of the metal. When the required depth of carbonization is secured, the article is dropped, red hot, into cold water; this makes the carbon skin or "case" perfectly hard. The interior of the article, not having been carbonized, remains soft and tough. The desirable and sought-after product for case hardening was one that would be susceptible of repeated use; the small pill, maintaining its identity when heated, answered this need. The uniform distribution of carbon and energizer, resulting from their use in powdered form, and the maintenance of this relation by the permanent binding together of the particles, as well as the freedom from dust, were additional advantages of this pill or pellet formation. Moreover, a waste material, the coal or coke dust, theretofore discarded, was utilized.

A new product was thus created; a product of commercial value for definite uses.

Earlier patents, Dodds, British, No. 571, Aube, British, No. 738, Demenge, No. 564,053, Logan, German, No. 181,531, all of which mention incidentally case hardening, and Meyer, No. 524,904, while referring to the use of carbonizing briquets made of powdered materials or of balls of carbonizing paste, give no hint that these products will not be completely absorbed in a single carbonizing process, or that they will maintain their identity under heat; nothing whatever is said in any of them as to the method of manufacture. In our judgment, they are different products than those made under the process of the patent in suit.

Rodman's own earlier process and product patents, Nos. 949,442 and 949,448, and others, are likewise for a different product and process.

While each step in the process of making these pellets may be old as applied to other articles, the conception of this novel product, and of the combination of acts necessary to produce it is novel.

That the possible hints given by the patents cited were never grasped, that tons of coal and coke dust were allowed to go to waste, strengthen the presumption, inherent in the grant of the patent, that the conception involved an exercise of the inventive faculties and was not an obvious deduction.

In the light of the present knowledge, it may have been, a simple matter for defendant's expert, from a reading of the earlier patents, to create a product identical with that of the process in suit and by the same means; this, however, is no demonstration that the product or method would have been obvious to one skilled in the art but ignorant of the patent in suit.

Plaintiff's essential contribution to the art through the patent in suit was the step by which the identity of the small pellets was maintain-

ed, and their continued use, in actual practice for some 500 hours, made possible. Defendant made a substantially identical product by a substantially identical method.

Of the claims in suit, all except claim 10 cover the entire process of manufacturing the product that will retain its identity under heat; in claim 17, the final application of heat is expressly specified as a step in the process. Each of them must be held valid and infringed.

[4] Claim 10, however, omits this element; it is incomplete and vague, and must be adjudged invalid.

The decree will be reversed, and the cause remanded for further proceedings consonant with the views herein expressed.