**JOHNSON v. DUQUESNE LIGHT CO.**

District Court, W. D. Pennsylvania. August 15, 1928.

No. 1206.

Philip E. Siggers and Alva D. Adams, both of Washington, D. C., Emery, Booth, Janney & Varney, of Boston, Mass., and Christy & Christy, of Pittsburgh, Pa., for plaintiff.

Byrnes, Stebbins & Parmelee, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge. This is a patent suit involving the validity and infringement of Johnson patent, No. 1,366,-078, issued January 18, 1921, on application filed March 16, 1918, Serial No. 222,947.

Claims 6 to 11 of the patent are in suit. These all undertake to cover a method of testing of strings of suspension insulators on live transmission lines for the purpose of ascertaining whether or not any of the insulator units is defective.

As applied to electric lines, an insulator is a barrier to prevent the flow of electric current. On telegraph lines and low voltage transmission lines, single insulators are used, but on higher tension lines the number of insulators is increased to care for the increased voltage. These insulators are of porcelain, and, when a number of them are used, they are placed one on top of the other, being connected either by cement or metal parts, as in the so-called pin type of insulators; or they are connected in a string, forming what is known as suspension insulators. It is to these that the method of testing of the patent applies.

In this string of insulators, each assumes a share of the insulating effect. The voltage distribution to each insulator in the string is not uniform, however, but varies; the insulator next to the line having the greatest voltage across it, and the voltage decreasing with each insulator until the insulator next to the grounded tower is reached. If an insulator is entirely defective, the entire line voltage will have to be withstood by the remaining insulators of the string; if partially defective, it will carry but a part of its normal voltage, casting a greater burden, therefore, upon the remaining good insulators of the string.

The normal distribution of voltage to this string of insulators is known, and was determined, by well-understood electrical principles, before the Johnson patent. If a single insulator did not carry its expected voltage, it was, of course, defective. To ascertain whether a single insulator located in a string of insulators on a live transmission line was carrying its normal share of the

voltage or not, you would necessarily compare its actual condition with its normal and expected condition in a string of good insulators by some voltage determining device. A common device recognized by the standard rules of the American Institute of Electrical Engineers for the last 20 years is the spark gap.

The patent in suit sets forth a procedure in which arcs or sparks are drawn from the metallic parts of the insulators in the string, and the intensities of the arcs drawn from the different parts of the insulators are compared. The lineman making the test must know from experience about what the normal voltage distribution is over the different insulators of the string. If he finds, as indicated by the length of the sparks, that the voltage over each insulator is that which would be normally expected from its position in the string, then the voltage distribution is normal, and the string of insulators is good. If, on the other hand, he finds that there is no arc, or that the arc is shorter than expected from that insulator normally, he knows that the insulator is partially or wholly defective. The procedure of the patents describes two necessary steps in this method of testing: (1) The feeling out of the string insulators by a buzzer to ascertain whether insulator faults be great or small; (2) the short circuiting of each insulator, one at a time, in receding order from the line wire, and noting the sound made and the length of the arc drawn. The instrument used in this test is a long wooden stick with a metallic fork at its end, commonly called a buzz stick. No novelty is claimed for this instrument, which was apparently well known before the Johnson patent. In the feeling out procedure, one horn or tine of the metallic fork at the end of the buzz stick is touched to the line wire, and then moved away therefrom to draw an arc or spark. The character of the sound is noted. The same procedure is then repeated with relation to the cap of each insulator in its regular order from the line wire; the sound and length of arc being noted. If the insulators are good, the arc and sound progressively diminishes as the testing recedes from the line wire, except that the cap of the insulator next to the tower gives more sound and a longer spark than the second one from the tower. If any one of the string is defective, the spark will have the same intensity as that drawn from the cap of the insulator next below it.

In the short-circuiting process, having first ascertained from the feeling-out process that the string, as a whole, is not perfect throughout, but that only a minority of the insulators are defective, the buzz stick is applied so that one horn or prong touches the hanger of each insulator and the cap thereof, thus short circuiting the hanger of an insulator onto the cap thereof. An arc is drawn from the cap of each insulator and its character noted. If there is a perfect string of insulators, there will be a progressive diminution of sound and the length of the arc as you recede in your testing from the line wire. A bad insulator will act as though it were not present.

According to the teachings of the patent, both steps are necessary to this method of test. The patent, lines 22–31, page 1, says: "In accordance with the invention it is first necessary to feel out the string insulators by an instrument which, because of the noise produced in feeling out, is termed a buzzer, the feeling out proceeding from the line wire toward the end of the string of insulators remote from the line-wire, this procedure avoiding danger of burning out the string of insulators should it transpire that the string is badly at fault."

Again, lines 53–64, page 2: "The procedure just described is what is called the feeling out the string of insulators and is needful to prevent the burning out the string should it transpire that, say, only one of the string of insulators is a perfect one and the others are all defective or most of them are defective. Such burning out would occur in the next step of the procedure in which the testing is to ascertain the particular insulators in a string that are defective, especially when such defects occur in the major portion of the number of insulators in the string."

And again, line 121, page 2, to line 5, page 3: "The preliminary procedure or feeling out process is needful to prevent a flash-over and a knock-out which would result if there should be but one good insulator in a string and this insulator was short circuited in the final test locating the particular faulty insulators. Such danger is removed by the feeling out process which does not go to the extent of short circuiting any insulator and it gives a rather clear indication as to whether there are enough good insulators in the string to stand the short circuiting process."

It will thus be seen that the short-circuiting step cannot be applied until the preliminary feeling-out process is gone through. Nor can it be applied at all if a majority of the insulators in a string is ascertained in the feeling-out process to be faulty because

of the danger of a flash-over or a blow-out in the line.

All of the claims in suit, however, omit this feeling-out process. For that reason we must hold them invalid, for, by the very terms of the specifications, the feeling-out process is an essential element in this method of testing, and may not safely be omitted. It is well-established patent law that the omission from a claim of an essential element in a combination process invalidates the claim. Novelty Mfg. Co. v. Brookfield (C. C. A.) 170 F. 946; Daniel Green Felt Shoe Co. v. Dolgeville (C. C. A.) 210 F. 164; Rodman Chemical Co. v. Deeds Commercial Laboratories (C. C. A.) 261 F. 189.

Claim 6 of the patent, even if you were to read into the claim the feeling-out process, is invalid, because it is not really a method or a process claim at all. It undertakes to cover the application of any testing device to strings of suspension insulators. Its language is as follows:

"6. A method of testing out strings of insulators on live transmission lines, which consists in applying a testing device to the separate insulating units in chosen order so as to cause sensible indications of the current on the line at the insulators and thereby ascertain by the character of the indications whether or not any of the insulator units is defective."

It will be seen that there are no procedural steps outlined at all, other than to apply a "testing device to the separate insulating units in chosen order." Certainly, a man cannot get a patent on the mere function of testing insulators by some sort of a testing device. To validate this claim would give this plaintiff a monopoly on the mere application of a testing device to electric insulators, a result not contemplated by the patent laws. Patents which seek to secure a monopoly for an effect or a result of a certain process have invariably been held to be invalid. Risdon Locomotive Works v. Medart, 158 U. S. 68–84, 15 S. Ct. 745, 39 L. Ed. 899; LeRoy v. Tatham, 14 How. 155, 175, 14 L. Ed. 367; Corning v. Burden, 15 How. 252, 265–268, 14 L. Ed. 683; O'Reilly v. Morse, 15 How. 62–120, 14 L. Ed. 601; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136; United Shoe Machinery Co. v. White Shoe Co. (D. C.) 270 F. 650; Siemund v. Enderlin (D. C.) 206 F. 283, 292.

Further, considering all of the claims in suit, we find that they do not prescribe a method which, if followed, will produce a certain result. In following the steps laid down by each of the claims in suit, no result at all is obtained as determinative of the effective value of any particular insulator, unless the lineman operating is capable of making correct mental comparisons between the arcs drawn and the sound produced, as compared with those which would emanate from a normal string of insulators. The only physical result of the application of the buzz stick in the manner indicated in any of the claims in suit is the producing of a sound and an arc. These tell nothing, unless the intelligence of the person operating the buzz stick is brought into play in the making of correct comparisons and deductions as to the character of the sounds and the lengths of the arcs drawn with reference to those heard and drawn from a normal string of insulators.

These claims, therefore, must all fail, because they produce no results proceeding directly from the operation of the theory or plan laid down in the claims. To be patentable, a method laid down to be followed must produce the desired result from the mere following of the method prescribed. 1 Robinson on Patents, § 166, p. 249; Manhattan General Construction Co. v. Helios-Upton Co. (C. C.) 135 F. 785, 788; Smithey v. Robertson, Commissioner of Patents (C. C. A.) 299 F. 248; Whittemore v. Cutter, Fed. Cas. No. 17,601.

If, however, we brush all of these considerations aside and turn to the merits of the claims in suit, we find that the use of a buzz stick for the testing of live transmission lines is not new with Johnson. The testing procedure defined in the claim in suit is shown in the prior art.

In a Swedish publication, "Teknisk Tidskrift," issues of April 7 and May 5, 1915, we find an article by Borquist & Centerwall, which shows the application of a buzz stick testing device to live transmission lines for the purpose of measuring the voltage distribution on a string of insulators. The article shows the actual device used (Defendant's Exhibit 000) applied exactly as in the Johnson Patent (Fig. 2). Below is a cut of the Borquist & Centerwall test stick as applied to a string of insulators.

**Defendant's Exhibit OOO.**

Figure 17 of the Borquist and Centerwall Article Appearing in the Teknisk Tidskrift.

The article indicates that the method was used in actual line conditions, so that there was an actual reduction to practice of this method. We therefore must find that the Borquist & Centerwall test stick and method of application clearly anticipates the claims of the patent in suit.

In the American prior art, we find the Austin test stick (Defendant's Exhibit CC) applied in the same method as that claimed by Johnson, used for the testing of a string of insulators on live transmission lines, exactly as in the Johnson method. This was in 1913. Again, clearly the claims of the patent in suit are anticipated by the Austin stick and method.

**Defendant's Exhibit CC.**

Austin's Sketch of His Test Stick.

Defendant's Exhibit DD, showing Austin's sketch of his stick as applied to a string of insulators, clearly indicates the similarity of use.

**Defendant's Exhibit DD.**

Austin's Sketch of His Test Stick Applied to a String of Insulators.

Austin used this method of testing at Barberton, Ohio, publicly, and it was known to a considerable number of engineers.

Again, we find that Noble tested insulation on the live transmission lines of the Consumers' Power Company, 1912–1913, by the use of a buzz stick, as described by Johnson. We also find that a lineman, Benge, used a forked stick for testing insulators of the Au Sable Electric Company during the year 1913.

All of which leads us clearly to the conclusion that, even if Johnson did describe in his claims in suit patentable methods of procedure in testing insulators, those claims are invalid for want of novelty.

Finally, even if the patent in suit be held valid, it is not infringed by the defendant, for it does not follow the Johnson method. The defendant uses the tester known as the Doble tester. Defendant's Exhibit CCCC produced below.

DOBLE TESTER

**Defendant's Exhibit CCCC.**

Illustrative Diagram Showing the Internal Connections of the Doble Test Stick.

In the use of this tester, the Johnson method is not followed, for, in the first place, no feeling-out process is necessary nor used in its application. In the second place, there is no comparison of sounds nor the length of arcs drawn with those of a normal string.

The Doble tester varies from the buzz stick of Johnson, in that it is itself equipped with an insulator or condenser ($C$ of the sketch here produced) and adjustable spark gap $S$ and a telephone receiver $T$, so that when the two prongs $P$ and $P$ are applied to different sides of an insulator, if there is a sound carried through the telephone to the ears of the operator as the current jumps the spark gap $S$, the insulator is good; if no sound is given through the telephone on the application of the prongs to either side of an insulator, the insulator is bad. There is no comparison of arcs or sounds as in the Johnson method.

We therefore find that there is no similarity in the method of using the Doble tester to that used in the claims of the patent with the buzz stick device, and that, even if the patent were valid, there could be no infringement.

From all of which it follows that the plaintiff is not entitled to the relief prayed for; and a decree may be submitted for the dismissal of his bill.