## IDEAL ROLLER & MFG. CO. v. SUTHER-LAND PAPER CO.

## SUTHERLAND PAPER CO. v. IDEAL ROLLER & MFG. CO.

### Nos. 7391, 7392.

Circuit Court of Appeals, Sixth Circuit.

May 13, 1938.

C. Paul Parker, of Chicago, Ill. (Parker, Carlson, Pitzner & Hubbard, C. Paul Parker, and Lincoln B. Smith, all of Chicago, Ill., on the brief), for appellants.

Thos. H. Sheridan, of Chicago, Ill., (Sheridan, Davis & Cargill, of Chicago, Ill., on the brief), for appellees.

Before SIMONS and ALLEN, Circuit Judges, and FORD, District Judge.

ALLEN, Circuit Judge.

The patentee owner and his licensees brought suit for injunction and to recover damages for infringement of patent No. 1,594,356, issued on August 3, 1926, to Arthur B. Davis. The patent discloses an inking roll and method of and apparatus for treating ink-rolls of printing presses, its main purpose being that surfaces of such rolls may be renewed. The Sutherland Paper Company is the user of the three

machines charged to infringe, which were manufactured and supplied by Samuel Bingham's Son Manufacturing Company.

The patent contains seven claims, three of which are for a process, one is for the apparatus, and the remaining claims are for the product itself.

Prior to this patent and the change brought about by the Davis method, printers' inking rolls were commonly made of a molasses and glue composition which was cast or molded. These molded rolls had to be renewed soon after installation because they became cracked and scored, did not properly spread the ink, and became unsuitable for quality printing, since in deterioration they would lose their "tackiness," or nice affinity for ink. They expanded and contracted with changes of temperature and humidity, sometimes actually melting in the presses. This required extensive replacements, or use of worn rolls because of the prohibitive cost of frequent changes. The problem was to secure a roll which would resist change in temperature and humidity and at the same time be soft enough to pick up the ink perfectly, and thus avoid replacements. The use of rubber rolls had been attempted but these lacked the required "tackiness," and were in general unsatisfactory except for the class of printing which is done in newspapers. The Davis process is particularly adapted to rolls employed in quality printing and color work. It provides for coating the rolls made of rubber or other material, by "pouring over the surface of the roll while in an inclined position a coating material or composition in a molten state in excess of the amount needed" and then placing the rolls in an endwise position to drain so as to leave a very thin film of the composition on the roll. When the surface becomes cracked and unsuitable for quality printing, the film can be removed by hot water and the roll can be cheaply recoated. Claim 6, the apparatus claim, discloses a frame which supports the roll in an inclined position and a container for pouring the composition over the roll. The article claims define the product in terms of the process.

The coating machines made by the Bingham Company and charged to infringe the Davis patent are of three different types:

(1) The vertical machine which coats the roll by means of sliding a circular trough filled with molten composition down the roll when placed in an endwise position.

(2) The inclined nozzle machine which coats the roll by flowing the composition over the roll when in an inclined position; and

(3) The inclined trough machine which coats the roll by sliding a trough filled with the molten composition down the under side of the inclined roll.

The roll is rotated during the coating process in all three machines.

The District Court found the method claims, 1, 2, and 3, valid but infringed only by the inclined nozzle machine, and in view of the prior art, limited the process to one where the composition is poured directly over the surface of the roll. The Bingham Company and the Sutherland Company have filed a cross-appeal to this portion of the decree, asserting that claims 1, 2, and 3 are invalid for want of invention.

The apparatus claim, No. 6, was declared invalid for want of invention, and the product claims, 4, 5, and 7, were held invalid upon the ground that they describe in terms of the process a product which has no patentable novelty. Davis and his licensees appeal from this part of the decree, and also from the holding limiting the infringement of the process claims to the inclined nozzle machine.

We think the court was correct in its conclusions as to claims 4, 5, 6, and 7. The apparatus disclosed by claim 6 is a framework with bearings which support the roll base in inclined position. A trough underlies the frame, and is intended to receive the excess composition as it drains from the roll. For the purpose of rotation a crank is used and a container with nozzle attached is employed to hold and apply the composition to the roll. The apparatus is of obvious type, and discloses no invention.

The product claims likewise are invalid. Appellants frankly concede that the claims define the roll in terms of the process. While this may properly be done when the product itself is new [Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952; Providence Rubber Co. v. Goodyear, 9 Wall. 788, 76 U.S. 788, 19 L.Ed. 566; Dunn Wire-Cut Lug Brick Co. v. Toronto Fire Clay Co., 6 Cir., 259 F. 258, 261], the conception of a printing roll made by applying a coating of composition to a base of a different material was far from new. Various patents introduced in evi-

dence disclosed such a product, and Spadone, 199,116 (1878); Crump, 1,141,320 (1915); Runge, 1,386,427 (1921) and Princhette, 95,688 (a French patent, 1872), use rubber for the roll base.

Appellees claim that the process claims, 1, 2, and 3,[1] are invalid (1) because they omit essential steps in the process, namely, the rotation of the roll and the movement of the coating means along the roll, and (2) because they lack patentable invention.

 The first point has no merit. The patent discloses a roll placed either in an inclined or a vertical position (claims 2 and 3). On rolls so positioned the coating means necessarily moves along the roll. While a claim, incomplete and vague because it omits an essential element, is void [Rodman Chemical Co. v. Deeds Commercial Laboratories, 7 Cir., 261 F. 189], we think that the patent does not omit the element of rotation. Rotation of the roll is repeatedly stressed in the specifications, and is shown in the drawings which reveal a crank for this purpose. The specification and drawings can not extend the scope of the claims, but may be resorted to in order to make the claims operative. Chicago Forging & Mfg. Co. v. Bade-Cummins Mfg. Co., 6 Cir., 63 F.2d 928, 930; Wadsworth Electric Mfg. Co., Inc. v. Westinghouse Electric & Mfg. Co., 6 Cir., 71 F. 2d 850, 852. The element of rotation is by necessary implication present in the process claims of the Davis patent, each of which requires a pouring over the surface, that is, a covering of the roll, by the coating material. Obviously if this is to be achieved by a roll placed in an inclined position, it must be rotated. The weakness of this contention doubtless explains why it is raised for the first time in this court.

Neither do we think that the process was anticipated by the prior art. The gist of the Crump invention, which of the prior art patents most nearly resembles Davis, is "forming either the entire roller or the exterior of the roller by spirally spinning the composition, layer upon layer, on the stock." Crump was horizontally rotated and the excess material was wiped off by wings or scrapers. Princhette states that he secures a thin layer of roller composition on a layer of rubber, but does not disclose how he secures it except that he says "finally over the rubber we flow [coulons] a layer c of 4 to 5 millimeters of thickness of the ordinary composition." What this means depends upon which translation of the word "coulons" is followed. The authorized dictionary translates the French verb "couler" as meaning either "flow," or "cast." The patent gives no hint of what other steps are employed in the process except the above sentence, and therefore is too indefinite to be an anticipation of Davis.

 If there were doubt upon this subject, the broad commercial use of the Davis process would be considered in determining novelty, utility, and invention. National Battery Co. v. Richardson Co., 6 Cir., 63 F. 2d 289, 292. The existence of a need for the process for many years and the fact that it was not theretofore met is also material. Gairing Tool Co. v. Eclipse Interchangeable Counterbore Co., 6 Cir., 48 F. 2d 73, 75. Since the allowance of the Davis application there has been a steady growth in the manufacture of so-called "process" rolls under the Davis method, resulting in sales amounting to more than two million dollars. Some of the largest of the quality printing plants in the country are equipped under license to use the Davis invention. Likewise the practical results of the process are impressive. The cast glue roll melts because of excessive heat in rotation, and at times runs into the presses. The Davis

---

1 "1. The method of coating an inking roll for recoating or completing said roll, which consists in pouring over the surface of the roll a coating material or composition in a molten state in excess of the amount needed for said coating, and permitting the surplus material to drain from the roll, leaving a film of composition thereon.

"2. The method of coating an inking roll for recoating or completing said roll, which consists in pouring over the surface of the roll while in an inclined position a coating material or composition in a molten state in excess of the amount need-

ed for said coating and allowing the surplus composition to drain in an endwise direction from the roll, leaving a film of composition thereon.

"3. The method of coating an inking roll for recoating or completing said roll, which consists in pouring over the surface of the roll a coating material or composition in a molten state in excess of the amount needed for said coating, then mounting the roll in a vertical position and allowing the surplus material to drain in an endwise direction from the roll, leaving a film of composition thereon."

roll runs cold, and consequently eliminates many practical disadvantages of the cast roll. The cast roll is eccentric, that is, the circumference of the printing surface is not concentric with the axis of the shaft supporting it. The Davis roll is for all practical purposes concentric, and thus produces better results. Because of these faults in the cast glue roll, the press has to be run at reduced speeds and sometimes has to be shut down to change the rolls or to readjust their setting, with consequent loss of efficiency. The reduction of cost for rolls per year is shown by one expert to be about fifty per cent. with the use of the Davis process roll.

The difficulties thus obviated by Davis have been recognized for many years. Sentell, 48,453 (1865), Crump, and Princhette speak either of the sensitivity of the cast gelatin roll to temperature, of its tendency to eccentricity, or of the cost of discarding the entire roll. But this record does not show that any coated roll was commercially produced before Davis. The quality printing industry has recognized and accepted the process as filling a long-felt need.

We conclude that the process claims are valid, and next consider the question of infringement. This involves a consideration of the scope of claims 1, 2, and 3.

The District Court held that in view of the file-wrapper history of the Davis patent, the process was limited to one whereby the coating of the composition is poured directly upon the roll, and that the claims therefore are not infringed by a process in which the roll is covered with composition by application in another manner. Hence it held that only the inclined nozzle machine infringed.

The controversy revolves around the meaning of the words "pouring over the surface," found in all three method claims. The patentee and his licensees contend that these words do not describe an essential element of the invention, and that their use in view of the file-wrapper history is not a limitation. They urge that the main feature of the Davis invention is the application to the base roll so supported as to cause drainage lengthwise of the roll of a thin coating of molten composition to cover the entire surface of the roll by flooding or pouring thereon in excess of the amount required, beginning at the top and flowing progressively downward. The viscous material forms a thick collar of composition, most of which runs off as waste, and in its molten state the collar moves down the roll and heats the successive parts thereof. The material behind the collar cools, the roll is set on end for draining in an endwise direction, and a uniform film of composition is left thereon.

Since the District Court in its limitation of the process claims relied upon the Davis file-wrapper, we consider that history somewhat in detail. The examiner had rejected the method claims, disallowing 1, 3, and 4 on Crump of record. During the negotiations he stated that "the expression 'flooded' is clearly the equivalent of 'pouring.'" The appellant relies on this statement as supporting his contention that the process claims should not be given a construction so limited as that applied by the District Court. The examiner also pointed out that the coating of Crump was applied from an elevated vessel, the same as applicant's device. An oral conference was held with the examiner, and Davis then amended his claims to read as in their final form. In his letter explaining the amendment Davis stated that the examiner took particular exception to the phraseology of the claims and more particularly to the use of the term "flooded." He continues, "as a result of the interview it was agreed that a more apt expression would be the language used in the claims now submitted, i. e. pouring over the surface of the roll a coating of material or composition in a molten state *in excess of the amount needed for said coating*. The underlined [italicised] portion is the language agreed upon which expresses the process whereby the roller is subjected to an excess of material, the excess material being permitted to drain from the roller and whereby a thin uniform coating is retained on the surface of the roller."

We think that the decree upon this point also was correct. After repeated rejection and amendment, the patentee changed the word "flooding" to "pouring over the surface," and by this restriction avoided Crump as an anticipation. While the examiner stated that "flooded" is the equivalent of "pouring over the surface," the statement was given as constituting one reason why the examiner rejected claims 1, 3 and 4 on Crump. In the subsequent oral conference he took exception to the term "flooded" and receded from his original position by allowing the amended claims. The patentee acquiesced in the rejection of his claims in their broader form, and is now

estopped to claim the benefit of the rejected claims or their equivalent. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U.S. 425, 429, 14 S.Ct. 627, 38 L.Ed. 500; Dillon Pulley Co. v. McEachran, 6 Cir., 69 F.2d 144, 146.

The decree is affirmed.