### KENNEDY v. GENERAL MOTORS CORPORATION.

#### No. 7457.

Circuit Court of Appeals, Sixth Circuit.
Nov. 15, 1938.

---

Russell Wiles, of Chicago, Ill. (Russell Wiles, Horace Dawson, George A. Chritton, Jules L. Brady, and Dyrenforth, Lee, Chritton & Wiles, all of Chicago, Ill., on the brief), for appellant.

Drury W. Cooper, of New York City (Drury W. Cooper, of New York City, E. D. Sewall, of Detroit, Mich., Drury W. Cooper, Jr., of New York City, and Bruce G. Booth, of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The judgment appealed from dismissed plaintiff's bill for patent infringement on the ground patent No. 1,514,664, issued to him on November 11, 1924, and which covers a method of making malleable iron, was void for want of invention.

The treatment of certain types of cast iron by prolonged heating, generally in oxidizing surroundings, leads to a profound change in the condition of the carbon. The white iron cast for this purpose is very hard and brittle. However, if "white" iron of suitable composition, which has solidified without separation of graphite, is subjected to prolonged heating in oxidizing surroundings, part of the carbon is oxidized and removed entirely while the remainder is deposited in the form of nodules of finely divided carbon. These do not seriously interfere with the strength or ductibility of the metal as do the graphite flakes of gray cast iron and the iron is thus rendered malleable. The malleable iron is inferior to wrought iron or steel as it contains impurities but is strong and ductile enough for many purposes.

Practically all iron is first made in a blast furnace and cast into pigs from which it issues as gray or ordinary cast iron, which is iron combined with carbon. It sometimes is made into steel without intermediate cooling.

The usual charge that goes into open hearth, electric or air melting furnaces for making malleables is made up of batches of iron and steel, pig or scrap, analyzed to get the proper chemical proportions of each necessary component, allowing for normal losses or additions during the melting process.

One type of furnace used in metallurgy is the cupola, which is a tall tubular structure built of steel plates and lined with fire brick, which is old to the art. It is employed in iron foundries to melt pig and scrap, for castings, or pig iron in steel works for the Bessemer converter, and is a cheap and fast melting device. It is not singly suitable for making malleables because its product is high in carbon and sulphur content, due to the direct contact of the coke with the iron.

The claims relied on in appellant's patent are 2, 5 and 7 which are as follows:

Claim 2: "The process of preparing iron for malleable castings, which consists in melting in a primary furnace a charge of such amount as may be melted within practical limits, melting an additional charge in a cupola, and intermixing said charges in the furnace to equalize the chemical content thereof."

Claim 5: "The process of preparing iron for malleable castings, which consists in melting a charge of iron in a primary furnace, melting another charge in a cupola, analyzing each charge, transferring the cupola charge to the furnace, and mixing said charges in the furnace in such proportions as to produce a final product of desired chemical content."

Claim 7: "The process of preparing iron for malleable castings, which consists in melting a quantity of iron high in manganese in a primary furnace, melting an additional quantity in a cupola whereby the sulphur content is increased, and mixing the cupola iron with that in the furnace to equalize the chemical content and obtain a proper sulphur-manganese ratio."

Appellant's patent in simple terms undertakes to define a duplex process for the making of malleable iron. He claims his method permits using the full capacity of the melting furnace by reason of pouring into it the hot mixture from the cupola furnace which would take less time to heat the whole, and that by balancing the combination in the two furnaces in the proper chemical proportions, the desired result is obtained more quickly.

A glance at the specifications and claims of the patent granted to the appellant shows that the invention therein described consists simply in placing in the melting furnace a part of the hot liquid directly from the cupola furnace with the result that the whole is more quickly heated.

Cupola furnaces are less expensive to build and operate than other types and the appellant claims that his invention which his counsel cognominates a "happy thought" enabled the expansion of furnace facilities to include both the primary and cupola in use simultaneously in the making of malleables.

The refining of ferrous metals is a highly developed art which had its beginnings in antiquity. In ancient days rich iron ore mixed with charcoal was heated in holes in the ground on the sides of the hill where the prevailing winds produced a blast of air. In this way, small pasty masses of iron, mixed with slag, resulted, which were worked with the hammer into wrought iron, leaving therein most of the slag. Modern methods are much the same in principle, but the objective is to purify the iron more completely and to give definite proportions of alloying elements such as carbon and manganese in order to fit the product for its intended uses.

[1] The industry has for years had the benefit of untiring scientific specialists and the simple advances in the art are the fruits of mechanical growth and belong to the public. Hansen v. Slick, 3 Cir., 230 F. 627.

The facts of general knowledge of which we may take judicial notice, Slawson v. Grand Street Railroad Company, 107 U.S. 649, 655, 2 S.Ct. 663, 27 L.Ed. 576, teach us that the duplexing process for refining iron is old and its chief objective was speed. It had its origin in Germany where two open hearth furnaces were used for irons too low in phosphorus for the basic converter.

In the first furnace run at a low temperature, the phosphorus and silicon were eliminated into a lime slag, the furnace tapped, the slag separated and the liquefied metal introduced into another and hotter furnace wherein awaited a proper slag for rapid carbon elimination. It is called the "Bertrand Thiel" process. Hoesch modified it by recharging the partly purified metal back into the furnace from which it had just been drained. Super refining molten basic steel in an electric furnace is another method of duplexing which has been practiced in America since the development of the furnace, for eliminating sulphur and oxidizing particles.

Referring to the prior art as put in evidence, the Durfee patent No. 118597, issued in 1871, used one or more cupolas in connection with the reverberatory furnace, and the metal in the cupolas was tapped and run into the reverberatory furnace and from that into molds or into ladles to be poured into molds.

Beginning in 1919 the American Cast Iron Pipe Company of Alabama used the duplexing process, operating an electric furnace in connection with cupolas. About ten tons of molten cupola metal was poured into the electric furnace, first with an acid lining and thereafter with a basic lining on top of about one ton of steel scrap. The cupola metal was poured into the electric furnace in ladles of approximately three tons each and as soon as the first one was poured in, the electricity was turned on. Then the balance was ladled in and the combined metal heated until pouring temperature was reached, and the metal then poured into molds with the ladles. Throughout the day this was continued by tapping out of the electric furnace a ladle full of metal at a time to be poured. About ten percent of cold steel scrap was dumped into the electric furnace and ninety percent molten cupola metal poured in on it and each was analyzed periodically and the proper chemical additions added to make cast or gray iron. In 1914, the National Malleable & Steel Castings Company in Chicago used the same duplex system as that used in Alabama, except they made malleable iron.

Appellant's patent does not disclose the exercise of the inventive faculty and is devoid of the development of any new or original idea in the sense of the patent law. Brown v. Piper, 91 U.S. 37, 44, 23 L.Ed. 200; Smith Corporation v. Petroleum Iron Works, 6 Cir., 73 F.2d 531; Cleveland Trust Company v. Schriber-Schroth Co., 6 Cir., 92 F.2d 330; Ajax Manufacturing Company v. National Machine Company, 6 Cir., 93 F.2d 344; Ideal Roller & Mfg. Company v. Sutherland Paper Company, 6 Cir., 96 F.2d 675.

The decree is affirmed.