EMERY v. GEORGE H. BOWMAN CO.

(Circuit Court of Appeals, Sixth Circuit.
March 10, 1926.)

No. 4409.

1. Patents ⬅328.

Reissue patent No. 15,641, claims 6–9, 11–15, for artificial fruit and method of producing it, *held* valid, as showing invention, and not anticipated.

2. Patents ⬅26(2).

Combination of old elements to produce a new and beneficial result is evidence of invention.

3. Patents ⬅18.

Simplicity of a method does not necessarily detract from its patentability.

Appeal from the District Court of the United States for the Eastern Division of

the Northern District of Ohio; Paul Jones, Judge.

Suit by James H. Emery against the George H. Bowman Company. Judgment for defendant, and plaintiff appeals. Reversed.

Clifford E. Dunn, of New York City (Fay, Oberlin & Fay, of Cleveland, Ohio, on the brief), for appellant.

Albert R. Teare, of Cleveland, Ohio (Bates, Macklin, Golrick & Teare, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. [1] Suit for infringement of United States reissue letters patent No. 15,641, designated "Artificial Fruit and Method of Producing the Same." Claims 6, 7, 8, 9, 11, 12, 13, 14, and 15 are in controversy. Each of them provides for the same general structure consisting of: (1) A hollow casting of waxlike material; (2) an application of color to the surface thereof; (3) a translucent protective covering of the colored surface of the same coefficient of expansion as the casting itself, which will not chip off or crack. Claims 11 to 14, inclusive, utilized in giving a fuzzy appearance to the surface of plaintiff's peach, comprise, in addition to the characteristics enumerated, slight abrasions of the coating with a finely powdered pumice. The lower court held that the articles thus produced did not amount to invention.

The basic element of the process—the hollow wax casting—is made from a mold of the article to be imitated, partially filled with a composition of paraffin and carnaüba wax, heated to a fluid condition, agitated until it is spread over the inner surface, and then permitted to cool and solidify. When the mold is removed, the irregularity on the surface formed by the meeting of the parts of the mold is reduced and the surface colored in imitation of the natural fruit. The casting is then completely covered with a coating of translucent wax of substantially the same coefficient of expansion as itself. The fruit which defendant is selling is produced in like manner.

When the plaintiff began to place his fruit on the market, there was in existence as a commercial commodity the Grinnell fruit, wholly different in consistency and method of production from the Emery product, which upon appearance of the latter was driven from the market. Other products theretofore existing were made from wax castings of paraffin or other composition, produced substantially as plaintiff's casting was produced, trimmed and then painted the color of the fruit, and in some instances covered with a protective coating of varnish. It appears, however, that the varnished surface was not durable, but would soon crack and chip. Emery, as he claims, and as we think the evidence shows, was the first to discover that, to avoid cracking and insure durability, the outer coating should have substantially the same coefficient of expansion as the body of the product, or, in other words, consist of substantially the same material as the casting. This idea was embodied in his product, the utility of which was attested by favorable public reception, resulting in widespread imitation. The need for an artificial fruit for display and ornamental purposes that was durable, indistinguishable from natural fruit in appearance, and obtainable at reasonable prices, had existed for years. The plaintiff filled it. It is true that the wax castings were old, as was plaintiff's method of decorating them; but at this point he advanced from the art of his predecessors to the accomplishment of a commercially successful product which they had failed to produce. He used a translucent covering of similar material having the same expansion as the casting itself, and thus created a product that would not chip or crack (as the varnish coating did), was durable, and capable of utilization in commerce.

[2, 3] It may be assumed that all the elements of plaintiff's product had been used in some form or environment; but he assembled them into a new combination, and produced a beneficial result never before attained, which, as said in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, "is evidence of invention." The simplicity of his method does not necessarily detract from its patentability. Barbed Wire Cases, 12 S. Ct. 443, 143 U. S. 275, 36 L. Ed. 154; Diamond Rubber Co. v. Consolidated Tire Co., 31 S. Ct. 444, 220 U. S. 428, 55 L. Ed. 527. In our opinion there is something more in his product than mere skill and artistry; it is the result of a novel method amounting to invention.

Prior use was not, we think, established by the evidence. Plaintiff placed some uncompleted products on the market more than two years before applying for his patent, but they lacked the final step which produced the theretofore unattained result—that is, they were not covered with the translucent coating of the same coefficient of expansion as the casting. Several witnesses testified to making artificial fruit for exhibition pur-

poses, but none of them, unless it be Kouieczkowski, used an equivalent of the process devised by plaintiff. The last-mentioned witness said that in 1916 he made some fruit in the manner taught by the patent. But his testimony, considered in the light of his present interest and his failure to pursue the art, is not, in our opinion, sufficient to maintain the defense. Eibel Co. v. Paper Co., 43 S. Ct. 322, 261 U. S. 45, 67 L. Ed. 523.

Judgment reversed.