## SOUTHERN TEXTILE MACHINERY CO. v. UNITED HOSIERY MILLS CORPORATION.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1929.

No. 5122.

Clarence B. Des Jardins, of Washington, D. C. (Melville Church, of Washington, D. C., on the brief), for appellant.

Cyrus N. Anderson, of Philadelphia, Pa. (A. V. Groupe, of Philadelphia, Pa., on the brief), for appellee.

Before MOORMAN, HICKENLOOPER, and KNAPPEN, Circuit Judges.

HICKENLOOPER, Circuit Judge. The bill for infringement of complainant's patent No. 1,050,433, issued January 14, 1913, upon application of Edwin O. Davis, for a machine for uniting knit fabrics, commonly called a looping machine, was dismissed in the District Court on the ground that the invention which was the subject of claim 13 in suit was fully disclosed in a patent, No. 1,050,432, issued to the same patentee on the same date, January 14, 1913, but bearing an earlier filing date.

On February 22, 1909, Davis filed his original application which disclosed the invention in suit and claimed it both in the language of the claim in suit and in more comprehensive claims. Having some difficulties in securing allowance of the broader claims, Davis filed a second application May 14, 1910, likewise disclosing the invention, containing the claim in suit, which had been transferred from the first to the second application, and also containing the broader claims. On June 2, 1910, the claims of the present invention were withdrawn from the earlier application. Both patents issued January 14, 1913. The applications were thus copending, and the effect of the procedure taken in the Patent Office was that of a division. It is now practically conceded by the defendant that the mere fact that the invention was disclosed in the earlier application, from which claims therefor were canceled during copendency of the second application, will not of itself invalidate the patent issued upon the second application containing the claims canceled from the first. This is quite in accord with the almost uniform adjudications in this and other circuits. Toledo Plate & Window Glass Co. v. Kawneer Mfg. Co., 237 F. 364, 367 (C. C. A. 6); Higgin Mfg. Co. v. Watson, 263 F. 378, 385 (C. C. A. 6); Traitel Marble Co. v. Hungerford Brass & Copper Co., 22 F.(2d) 259 (C. C. A. 2); Ide v. Trorlicht, etc., Carpet Co., 115 F. 137, 145 (C. C. A. 8); Montgomery Ward & Co. v. Gibbs, 27 F.(2d) 466 (C. C. A. 4). The apparently conflicting decision in National Electric Ticket Register Co. v. Automatic Ticket Register Corp., 15 F.(2d) 257 (C. C. A. 2), is in substance repudiated by the same court in the Traitel Marble Co. Case, supra, subsequently followed in Gibbs v. Triumph Trap Co. (C. C. A.) 26 F.(2d) 312, and Claude Neon Lights, Inc., v. Machlett & Son (C. C. A.) 27 F.(2d) 707.

Conceding that the bill was not properly dismissed on the ground taken by the District Court, defendant still insists that the dismissal was proper both for the reason that the record discloses anticipation and upon the ground of estoppel arising from the Patent Office proceedings in the cancellation of broader claims said to be of identical scope with that of the claim in suit if the latter be construed to read upon the defendant's machine.

Upon the subject of anticipation we are convinced that the combination shown, the means used, and the results accomplished were nowhere fully shown in the prior art. In the manufacture of knit fabrics, such as hosiery, it is necessary to unite the edges after the completion of the knitting operation. Loops are left along the edges to be so united and one loop from each of such edges is ordinarily placed upon an impaling pin of the revolving dial of a looping machine in which a reciprocating thread needle passes beneath the loops, the stitch is completed by the looper hook, and the two edges to be united are thus joined by a seam or chain of loose stitches of sufficient elasticity and similitude to the knit fabric to provide the desired soft seam. Prior to Davis, it was generally considered necessary in looping machines that the dial be stationary while the thread needle was passing beneath the loops upon the impaling pins and during the formation of each stitch. All dials in general use were therefore of the intermittently revolving type driven by pawl and ratchet and in which upon the completion of each stitch the dial was moved one step forward in its course. These machines

were accordingly designated as the "jumping" type.

Two patents only are seriously relied upon as anticipations. In the patent to Bridges, No. 300,760, June 24, 1894, the patentee was specifically interested in speeding the operation of the looping machine with the intermittently revolving dial. He accordingly provided his machine with easily removable dials of impaling pins, so that several operators might be engaged in placing the loops upon the impaling pins of separate dials while one was upon the looping machine. The patentee also conceived the idea that the machine might be operated at greater speed if the needle were passed beneath the loops and withdrawn while the dial was in motion rather than during the intervals between revolving motion. Bridges, however, considered it still essential that there be a pause in the motion of the dial at the time the looper hook passed adjacent the needle and made the stitch. By the ingenious use of a single cam and an arm bearing thereon Bridges gave to the pawl actuating the pin ring, and to the needle, the same lateral movement whereby the ring and the needle moved laterally together while the needle was making its forward or downward stroke, paused at or near the end of such stroke for the looper hook to operate, and resumed the joint or common lateral motion until the needle was withdrawn from the loops. Both needle and pawl then moved laterally in the opposite direction to the next pin and ratchet tooth, the dial remaining stationary, to repeat the operation. In the patent to Bridges we thus find the conception of moving the needle laterally during part of the stitch-forming operation and in registry with the impaling pins, but the machine was of the intermittently revolving type, the stitch was completed while dial and thread needle paused in their lateral movement, and no problem of resuming registry with a moving dial arose because the dial remained stationary until needle and ratchet pawl returned to the initial starting position for the next forward movement. Bridges did not apparently have the conception of a continuously revolving pin ring, nor did he realize the advantages arising therefrom.

The greater speed in operation arising from a continuously and uniformly revolving pin ring was recognized by the inventor Arnold in patent No. 543,795, issued July 30, 1895. Arnold, however, was an inventor of sewing machines, having devised such a machine for producing "back" or retrograde stitches during the continuous movement of the work, in his patent No. 378,645. See also patents to Singer, No. 13,661, 1855; to Mar-

ble, No. 568,032, 1896; and to Sturtevant, No. 581,496, 1897. In his machine for sewing looped fabrics (patent No. 543,795), Arnold devised a sewing machine in which no attempt was made to place the loops in registry upon the impaling pins, but an automatic feeding device was used whereby the edges to be united were fed by impaling pins during an ordinary sewing operation as distinguished from a looping operation. The rough edges were then trimmed off by a trimming mechanism provided. Indeed, in his specifications Arnold states that a close, smooth seam may be secured "without employing the slow and expensive process of registering loops, as in the looping or turning off machines in common use for uniting knit fabrics," speaks of his machine as "differing essentially from the ordinary looping machine, in which the points are so arranged that successive loops are impaled upon the points and the movement of the needle registers with the points," and says "it is evident that with my improved machine, in which the fabrics are united by sewing without registry of the loops instead of by looping, I am able to use with knit fabrics a feeding mechanism having a continuous movement, which is impossible with looping machines in which an intermittent movement is necessary."

It is therefore quite apparent that, while Bridges conceived the idea of moving the needle laterally during the revolving motion of the pin ring, he did not anticipate a combination which included the continuously revolving ring. Arnold used the continuously revolving pin ring and the retrograde stitch covered by his patent No. 378,645, in which a lateral movement was given to the needle, but without any attempt or apparent conception of the possibility of registry of the needle with the loops. In neither Bridges nor Arnold, therefore, do we find a precise anticipation of the complainant's invention of a strictly looping machine in which there is a continuously and uniformly revolving pin ring and a reciprocating thread needle which is carried laterally during its forward and rearward movements in the loops of fabric in such manner as to register with each pin and complete the stitch during the forward movement of each pair of loops. The Patent Office Examiner was of the opinion that "it would not require invention in view of Arnold, to substitute a continuously revolving ring for the intermittently revolving ring of Bridges." So far as appears from the present record, however, the machines of neither Arnold nor Bridges went into extensive commercial use, and although the advantages of the combination of Davis were

instantly recognized and broadly accepted by the art, no one had theretofore conceived his idea. While many of the so-called "jumping" type of machines are still in use, new installations are almost exclusively of the continuously revolving type, the wear incident to operation is decreased and the ease of operation on the part of the operator is increased, the commercial success of the invention and its acceptance by the trade is demonstrated, and the defendant has accorded to the patent the tribute of almost complete imitation. Unless therefore there is an estoppel arising from the Patent Office proceedings, we are of the opinion that although the separate elements were each old in the art a new result was obtained by their combination, that such combination disclosed invention, and that the patent is valid and infringed. Cf. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 434, 31 S. Ct. 444, 55 L. Ed. 527.

Claim 13 of the patent is alone in suit. This claim provides: "13. In a machine for uniting knit fabrics, the combination of a continuously revolving ring of impaling pins, and a laterally movable oscillating arm carrying a reciprocating curved thread needle passing above each of said impaling pins; of a driving shaft provided with a laterally movable connecting member adapted to reciprocate said thread needle, and a cam body operatively connected to said laterally movable oscillating arm whereby said thread needle is carried laterally during its reciprocatory movements in the loops to correspond with the movements of the latter as carried by said impaling pins."

The application also contained claims 11 and 12, which were rejected and canceled as not disclosing invention over Bridges in view of Arnold. Claim 11 reads: "11. In a machine for uniting knit fabrics, a ring of impaling pins, means for continuously and uniformly revolving said ring of impaling pins, a reciprocating thread needle, and means for carrying said thread needle laterally during its forward and rearward movements into loops of fabric to correspond with the movement of the subjacent impaling pins."

Claim 13 in suit reads directly upon the defendant's machine except as to that element "of a driving shaft provided with *a laterally movable* connecting member adapted to reciprocate said thread needle." In providing the connecting member between the eccentric of the driving shaft and the rocker arm or support for the thread needle, and to permit of the slight lateral movement of the thread needle in registry with the impaling

pins, the complainant made use of the common mechanical expedient of universal joints or ball and socket bearings at each end of the connecting member. The claim thus describes the preferred embodiment of a connecting member which is in fact laterally movable. In the defendant's machine a reciprocating connecting member is provided without the universal joint or ball and socket bearings at each end, but with a bearing at the end adjacent the thread needle, slidably embracing a pin upon the needle support. While the needle support is rocked by the reciprocating motion of the connecting member and given lateral movement by a cam, the connecting member itself has no lateral movement, but the pin slides in its bearing and thus permits the reciprocating motion to be transmitted to the needle support during its lateral movement in much the same way as by the use of the universal joints. It is urged that the defendant's connecting member nevertheless has lateral movement in the plane of its reciprocation and also a lateral movement with respect to the driving shaft. Such construction, however, is to strain the clear meaning of the claim. But we are of the opinion that the defendant has only adopted one well-known mechanical expedient for the equally well-known means of the claim. Each is the full equivalent of the other, and a determination of the question of estoppel must depend upon the range of equivalents to which the complainant is entitled.

As we have stated, the complainant's patent made a profound impression upon the art and has gone into wide commercial use. It is accepted by the trade as a radical departure from the prior machines. The utility of the machine and the advance in the art is demonstrated by the record. We are therefore of the opinion that the patentee should, consistent with the due application of legal principles in other respects, be protected in the enjoyment of his invention in proportion to his contribution to the art. Eibel Process Co. v. Paper Co., 261 U. S. 45, 63, 43 S. Ct. 322, 67 L. Ed. 523; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 415, 28 S. Ct. 748, 52 L. Ed. 1122; Dowagiac Mfg. Co. v. Brennan & Co., 127 F. 143 (C. C. A. 6); Gordon Form Lathe Co. v. Machine Co. (C. C. A. 6, decided April 12, 1929), 32 F.(2d) 55.

It must be conceded that where a claim is rejected on reference to prior patents and is then canceled without objection or appeal, or is so amended that the patentee must be held to have voluntarily restricted himself

866

to a specific structure, such patentee may not thereafter, by construction or by resort to the doctrine of equivalents, assert for the claim the full scope of the claim so rejected, canceled or amended. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 444, 47 S. Ct. 136, 71 L. Ed. 335; Grand Rapids Refrigerator Co. v. Stevens, 27 F.(2d) 243 (C. C. A. 6). This doctrine does not, however, go to the extent of depriving a patentee of protection against all equivalents and the doctrine may be subject to abuse when applied to the rejection upon reference of broad generic claims where narrower claims are allowed which would fully protect the patentee if permitted but a narrow range of equivalents. Under such circumstances the patentee may reasonably be content with the claim allowed if he be afforded a fair construction and the protection against obvious and exact equivalents; and the estoppel should go no further than to bar the patentee from reliance upon the canceled claim in its broadest or generic construction.

In the present case it is unnecessary to give to claim 13 the broad and generic construction of claims 11 and 12 or to construe claim 13 as covering all means for carrying said thread needle laterally. It is necessary only to give it a rational construction as disclosing the preferred embodiment of the invention and to afford to the complainant a very limited application of the doctrine of equivalents. So construed, we are of the opinion that infringement is disclosed.

The court below would not have been justified in finding the claim in suit invalid on the ground of anticipation nor in dismissing the bill for lack of infringement under the theory of estoppel. Since the final decree dismissed the bill without ruling upon the questions of validity and infringement, which have been argued here at length, such decree must be reversed and the cause remanded with instructions to enter a new decree finding claim 13 of the patent in suit valid and infringed.