## GAIRING TOOL CO. v. ECLIPSE INTERCHANGEABLE COUNTERBORE CO.

### Nos. 5530, 5531.

Circuit Court of Appeals, Sixth Circuit. Nov. 5, 1930.

On Petition for Rehearing April 7, 1931.

F. D. Hardesty, of Detroit, Mich., for appellant Gairing Tool Co.

S. C. Barnes, of Detroit, Mich., for appellee Eclipse Co.

Before DENISON and HICKENLOOPER, Circuit Judges, and WEST, District Judge.

HICKENLOOPER, Circuit Judge.

The appellee complained in the court below of the infringement of its patent re-issue No. 16,817, issued December 13, 1927, upon application of John Hugo Smith, for a reaming and counterboring tool. All nine claims of the patent were in issue. Claims 1 and 4 may be taken as typical of the two classes covered, and are printed in the margin.[1] It will be noted that they differ only in that claim 4 (with which claim 6 is to be aligned) requires that the ribs of smaller radii shall number at least three, to pilot the cutting ribs of larger radii. The other claims read equally upon a tool which has but two ribs of the smallest radii. The District Court held claims 4 and 6 valid and infringed, and the remaining claims invalid by reason of anticipation in the prior art. Both parties appeal.

The tool covered by the patent is designed for performing, simultaneously, counterboring, reaming, and chamfering operations upon a casting already provided with a circular aperture, whereby a depressed shoulder (or shoulders) surrounding the existing hole is produced, to exact dimensions as to depth, and the walls of such hole and of the newly produced shoulders are dressed in the same operation.

In the prior art, before Smith, various means were used for thus counterboring and machining. Counterboring tools with a pilot and reaming or dressing tools were common, but these were used upon the turret lathe, successively, each tool performing the single operation for which it was designed. Such tools frequently had three or more ribs to provide the cutting edges. The stepped counterbore was also old in the art and was constructed with three or more ribs to provide cutting edges of different radii, but the cutting edges of greater radii were mounted above and upon the same ribs as the edges of smaller radii. It is thus obvious that in the stepped counterbore of the prior art, the life of the tool was limited to that period within which the grinding for sharpening cutting edges would consume the shortest longitudinal distance between the different radii, for such grinding operations upon the cutting edges of greater radii would almost inevitably cut into the rib of less radius, thus deforming and destroying the dimensions of the cutting edge of lesser radius when that point was reached.

Drills or tools designed primarily for boring, but also susceptible to use for counterboring, in which separate ribs were provided for cutting edges of different radii, such as the tool covered in the patent to Thomas, No. 805,170 (1905), the patent to Bennett, No. 1,000,067 (1911), the boring bar of Heinkel, patent No. 1,337,015 (1920), with its insertable cutters, and the tool of the Ohio Brass Company, referred to in the record as the Mansfield use, were also known and used. But in each of these tools the independent or separate ribs for each radius, never exceeded two.

We concur in the opinion of the District Judge that the evidence establishes the prior invention and public use by the Ohio Brass Company, of a tool with separate, but only two, cutting ribs for each radius, with that degree of certainty and conviction which is required to defeat the patent (Barbed Wire Patent, 143 U. S. 284, 12 S. Ct. 443, 450, 36 L. Ed. 154), and that this use was not of the abandoned experiment type, nor within the lost arts. But even apart from the Mansfield use, it would be extremely difficult to sustain the claims which read upon a tool having only two ribs for each radius, in view of the patents to Bennett and to Thomas, which latter patent also departed from the principle of the stepped counterbore and was an advance in the direction of independent ribs for each radius, although this step was taken merely by providing a clearance and oiling

---

1. A tool of the character described, comprising a head, and a plurality of integral radial ribs, the outer ends of which form cutting teeth, said ribs being alternately spaced and different in length and diameter and the ribs of less diameter constituting pilot teeth and projecting beyond the ends of the ribs of greater diameter and extending substantially the entire length of the head, whereby the proper relation between the cutting ends of the ribs may be maintained at all times.

4. A tool for cutting in an already existent hole, comprising a shank terminating in a head, integral cutting ribs projecting from the sides of the head and running along the sides of the head in separate distinctly spaced ribs in sets of different radii but in overlapping relation, the sets of smaller radii running substantially to the outer end of the head and running beyond those of larger radii at the working end of the tool and numbering at least three to pilot the cutting ribs of larger radii.

groove, along a major rib, which divided the rib into portions of different radii. Bennett clearly shows two separate ribs for each radius. It follows that the decree finding claims 1, 2, 3, 5, 7, 8, and 9 invalid, and dismissing the bill as to such claims, must be affirmed.

A more difficult question arises as to claims 4 and 6, as to which the defendant below contends invention is not disclosed by the mere increase in the number of separate or independent ribs with their respective cutting edges. As above stated, however, pilots were in common use with the counterboring tools of the prior art when operated upon the turret lathe, and were considered necessary to produce work of accurate dimensions. The tool of the patent in suit provides such piloting means while at the same time the wall of the initial opening is dressed or reamed. The tool of the patent also provides additional means of radiation for the heat developed, and possesses, or retains, the much lengthened life which is due to the fact that the cutting edge of ribs of greater radii may be ground without injury to the ribs of less radii. So far as the present record discloses, the tool of claims 4 and 6 was both new and highly useful. It was immediately and enthusiastically accepted by the trade and has had great commercial success. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 495, 23 L. Ed. 952. The defendant below has paid it the tribute of extremely close, if not absolute, imitation. The need existed for many years, but was not theretofore met, machinists preferring to do the separate operations by turret lathe. This is indicative of the fact that more than mere mechanical ability was required to conceive the invention and reduce it to practice. Compare Southern Textile Machinery Co. v. United Hosiery Mills, 33 F.(2d) 862 (C. C. A. 6). As to claims 4 and 6, the references contained in the present record were all before the Patent Office, with the possible exception of the Mansfield use, and were rejected as anticipations, and this at least greatly strengthened the presumption of novelty and invention which arises from the grant of the patent. Hildreth v. Mastoras, 257 U. S. 27, 32, 42 S. Ct. 20, 66 L. Ed. 112; Smokador Mfg. Co. v. Tubular Products Co., 31 F.(2d) 255 (C. C. A. 2); Gordon Form Lathe Co. v. Walcott Machine Co., 32 F.(2d) 55 (C. C. A. 6).

We therefore conclude that invention is disclosed, that more was involved than a mere multiplication of elements, that the claims cover a true combination (compare Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 443, 31 S. Ct. 444, 55 L. Ed. 527), and not a mere aggregation of elements theretofore separately known and used in the art to perform identical functions, as in Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222, and Adams v. Galion Iron Works & Mfg. Co., 42 F.(2d) 395 (C. C. A. 6), and that the decree, finding said claims 4 and 6 valid and infringed, and the remaining claims in suit invalid, must be affirmed. No costs will be awarded either party in this court.

### On Petition for Rehearing.

Appellant, defendant below, files a petition for rehearing upon the ground of newly discovered evidence of prior public use by the Dayton Engineering Laboratories Company of Dayton, Ohio. Although this petition is supported by affidavits and drawings, such evidence is not of the type which we may consider upon an appeal, it not having been presented to the court below, and it is therefore incompetent to support a petition for rehearing as such. However, we are at liberty to consider such petition for a rehearing as an application for leave to file a petition in the District Court to reopen the case, and to remand the cause to the District Court for that purpose. This action will be taken only if the newly discovered evidence is of that substantial character which seems, prima facie, to seriously threaten the validity of the patent, and if it does not appear upon the showing made that the petitioner was guilty of laches in the discovery and presentation of such evidence to the court.

In the present instance it is also urged that the tool shown by the drawings produced could not have the piloting effect of the tool of the patent in suit, because the cylindrical shape had not been retained upon the outside edges of the cutting ribs of smaller radii, such edges being cut away from the cylindrical on straight lines, thus destroying that snugness of fit essential to a piloting action. We think it apparent that the tool of the alleged prior use would not have as efficient piloting action as the patented tool, but we think it equally clear that it would have some piloting effect, and perhaps sufficient to permit it to operate as a prior use. To this extent the drawings and affidavits constitute substantial evidence seriously threatening the validity of the patent; but whether or not such evidence is in truth sufficient to defeat the patent is primarily a question for the District Court upon a more complete presentation of the facts.

The defense of laches is based upon the contention that counsel for appellant was for some time employed in the patent department of the General Motors Research Corporation, a subsidiary of General Motors Corporation, that the Dayton Engineering Laboratories Company was also a subsidiary of General Motors, that under these circumstances counsel should have known of the practice of the General Motors Corporation patent department of keeping complete records of all new designs of tools or machinery, and that such counsel should therefore have applied to the General Motors Corporation for possible information of prior uses. But we are not impressed that due care required that counsel broadcast inquiries to all corporations by which prior uses might possibly have been made, nor is there assurance that if inquiry had been made of the General Motors Corporation such a search for uses by subsidiary companies would have resulted as to have disclosed this particular prior use. Upon the showing made we do not think the evidence of laches sufficient to defeat the present petition, but we do not intend to hold that a consideration of this issue is thereby foreclosed when the petition to reopen is heard by the District Court.

A reopening would be distinctly in furtherance of justice, especially since publicity has been given to the alleged prior use. If such evidence be sufficient to avoid a decree of injunction and accounting against other manufacturers or users, the appellant should not be the only manufacturer so enjoined. However, the application comes exceedingly late in the litigation, after trial in the District Court, and after hearing and decision in the Court of Appeals, and it is therefore discretionary with the court to impose terms. See Roemer v. Bernheim, 132 U. S. 103, 10 S. Ct. 12, 33 L. Ed. 277; Trane Co. v. Nash Engineering Co., 25 F.(2d) 267 (C. C. A. 1); Thomson-Houston Electric Co. v. Nassau Electric R. Co., 110 F. 646 (C. C., N. Y.) Barber v. Otis Motor Sales Co., 245 F. 945 (D. C., N. D. N. Y.).

It is accordingly ordered herein that the mandate be stayed, the decree of affirmance heretofore entered herein be suspended, that leave be granted to file a petition in the District Court to reopen this cause, and that the cause be remanded to the District Court for the purpose of entertaining such petition; but should such petition to reopen be granted, it is further ordered that appellant pay to appellee the sum of $2,500, expenses and counsel fees, as a condition to securing such relief.