## WESTINGHOUSE ELECTRIC & MANUFACTURING CO. v. QUACKENBUSH.
### No. 5710.

Circuit Court of Appeals, Sixth Circuit.
Nov. 10, 1931.

Rehearing Denied Jan. 13, 1932.

Drury W. Cooper, of New York City (Victor S. Beam and John C. Kerr, both of New York City, on the brief), for appellant.

A. J. Hudson, of Cleveland, Ohio (Kwis, Hudson & Kent, of Cleveland, Ohio, on the brief), for appellee.

Before DENNISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Appellant commenced this action in the District Court, complaining of the infringement by appellee of claims 5, 6, 8, 12, and 16, of patent numbered 1,066,468, and claims 1 and 2 of patent numbered 1,196,744, the patents being dated, respectively, July 8, 1913, and August 29, 1916, and both having been issued upon applications by Lewis W. Chubb. Both patents relate to the art of electric welding. Both were held invalid in the District Court, or, if valid, not to have

been infringed. Claims 8 and 16 of patent numbered 1,066,468, and claims 1 and 2 of patent numbered 1,196,744, are printed in the margin.[1]

Electric welding by the resistance method was very old. The surfaces to be welded were first brought into contact and an electric current was passed through one segment to the other. The resistance caused by the nonunion of the contacting surfaces generated heat which eventually fused the metal at this location. The current was disconnected and pressure exerted, and the weld took place. See patent to Thomson, 347,140, Thomson Spot Welder Co. v. Ford Motor Co., 281 F. 680, 682 (C. C. A. 6); and patent to Perry, No. 670,808. By another method, also, the necessary heat to fuse the metals was supplied by a well-defined electric arc. See British patent to Coffin, No. 7185 of 1890. In both of these processes pressure was applied at the moment of the weld; and in both an electric current was employed to produce the heat necessary to fuse the surfaces to be joined. In these respects the prior art methods were analogous to the method of the patent in suit.

Difficulties, however, arose in the use of the earlier methods to satisfactorily weld unlike metals having widely different melting points, the union tending to be purely a mechanical one in which the metal having the higher melting point was held incased in a ball of the metal of lower melting point. It was also found that, in the case of metals which formed a very brittle alloy, such as copper and aluminum, the fusion of both metals by the old processes produced points of weakness on each side of the joint where the welded structure was liable to break. The patentee Chubb conceived the idea that, if the heat-producing electric energy could be applied between the surfaces to be welded in comparatively enormous volume and for an almost infinitesimal period of time, and these surfaces could simultaneously be brought into percussive contact, both difficulties could be avoided. Both such surfaces would fuse, even though the metals had widely different melting points; but this fusion would be so shallow, and the film of brittle alloy would be so thin, that a true weld of flexible character would be produced. This is the inventive concept underlying patent No. 1,066,468.

By clamping the ends of the wires to be welded in chucks forming the terminals of his electric circuit, one of which was movable toward the other to effect percussive engagement of the surfaces of the wires, and by the use of a condenser or other reservoir for the storage of electric energy, Chubb obtained an explosive discharge at the very moment of the percussive contact by which the thus softened or fused surfaces of the wires were forged together. The entire discharge is completed in .00035 of a second. In this time the voltage drops from 207 volts to zero. The power expended rises from zero to 23,000 watts in .0001 of a second and almost as suddenly decreases, crossing the zero line with the voltage. This conception seems to us to possess the attribute of distinct novelty, and not to be a mere carrying forward of the old idea, a variation of degree, or improved craftsmanship. The nature of the weld produced and the speed with which the operation could be completed marked an advance in the art which was immediately recognized.

In addition to the prior art already cited, evidence was also introduced of the use, by plaintiff, for a period of more than two years prior to the application for the patent in suit, of a machine purchased from the Cooper-Hewitt Electric Company of Hoboken, N. J. In this machine the wires or rods to be butt-welded were first brought into contact to indicate that they were in proper alignment; a foot-operated switch in the electric circuit being open. The switch was then closed and the ends of the wires were separated a short distance by a hand-operated crank. The electric circuit also contained an induction coil, and upon separation of the ends of the wires and the closing of the switch the stored-up energy in the induction coil was discharged through the small gap between the adjacent ends, thus producing an arc which softened both ends. Continued operation of the cam by means of the crank again forced the softened ends of the wires into engagement and the switch was thereupon opened, and the weld was completed. While this machine is somewhat suggestive of the process of the patent in suit, in that an induction coil is stated to be one of the well-known means for storage or accumulation of electrical energy, it is to be noted that the induction coil of the Cooper-Hewitt machine was in series with the source of electrical energy, while in the patent in suit the

---

[1] 8. The process of welding metal bodies that consists in simultaneously effecting an electrostatic discharge at the surfaces to be welded and a percussive engagement of said surfaces.

16. The combination with a pair of clamping terminals for metal bodies to be welded and means for insuring rapid movement of at least one of said terminals to effect percussive engagement of the surfaces to be welded, of means for effecting a discharge of electrical energy between the surfaces to be welded at the instant percussive engagement thereof.

1. A structure comprising a plurality of metal bodies joined by an electro-percussively formed weld.

2. A structure comprising a plurality of metal bodies joined by an electro-percussively formed malleable weld.

condenser is arranged in parallel. The difference between the two processes was thus that the Cooper-Hewitt machine is properly classified as within the art of electric arc welding, and lacks the explosive discharge of accumulated energy as if upon the overturning of the reservoir, which latter factor constituted the real inventive step of Chubb. The advantages incident to the arrangement of a condenser in parallel with the source of electrical energy does not seem to us to have been so obvious as to be within the field of ordinary mechanical or electrical skill. In retrospect the change may seem a simple one, but it was a change which introduced a new mode of operation, and, according to the evidence, a vastly superior product in many cases. In this respect we think that it involved the exercise of inventive ability of no mean order. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 434, 435, 31 S. Ct. 444, 55 L. Ed. 527.

Defendant also contends that percussive engagement of surfaces to be welded is disclosed by patent to Farrensteiner, No. 540,-711, and by the Cooper-Hewitt machine, possibly by the British patent to Coffin No. 7185 of 1890, and that some of the claims in suit (e. g., claims 5, 6, 12, and 16) call simply for "an electrical discharge at the surfaces to be welded" preceding, or simultaneous with, the percussive engagement. It is thus urged that these claims read upon and are anticipated by the prior art even though the resistance or electric arc methods were there used. The claims must be read and construed in the light of the specification, and so liberally interpreted as to uphold and not destroy the right of the inventor in the substance of his invention. See Southern Textile Machinery Co. v. United Hosiery Mills Corp., 33 F.(2d) 862 (C. C. A. 6); Sun Ray Gas Corp. v. Bellows-Claude-Neon Co., 49 F.(2d) 886 (C. C. A. 6), and cases there cited. So construed and interpreted, the "electrical discharge" called for in the claims must be regarded as the sudden or explosive discharge disclosed by the specification. It is the discharge resulting from the use of a condenser arranged in parallel with the source of energy. It is a discharge radically different, in its effect upon the metals to be welded, from that used in the resistance and electric arc methods. Chubb was the first to conceive the advantages of this use for the condenser, and in this he should be protected. Under these circumstances we are of the opinion that the earlier methods may not be considered as anticipations, even though in some of them percussive engagement was employed. Compare Gordon Form Lathe Co. v. Walcott Machine Co., 32 F.(2d) 55, 58 (C. C. A. 6).

Lastly, it is claimed that the defendant does not infringe because the engagement of the two wires in defendant's machine is produced by the movement of one of them for a distance of but .006 of an inch, at which point the further movement of the arm is said to be momentarily arrested, and because this engagement takes place under the impetus of a light spring exerting a pressure of but three ounces. This movement in defendant's mechanism is thus urged to be merely the pressure or "follow through" of the prior art. Were the movement of the arm carrying the wire wholly unrestrained, it is probable there would be a spattering of metal and a defective, or at least an unsatisfactory, operation. The percussion or blow is manifestly much less severe in defendant's machine than was contemplated in the preferred form of the patent in suit, but, while the movement of defendant's feeding arm must be regarded as restrained, the contact between the wires is still "percussive." A blow may be light or heavy, but it is a blow in either event. The evidence supports the conclusion that the force exerted by the spring actuated movement of defendant's feeding arm approximates 1,500 pounds per square inch. This falls well within the definition of the claims. The defendant has appropriated and used the substance of the method disclosed in the patent in suit with no more variation than is consistent with its being practically the same thing. This constitutes infringement. Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 41, 42, 50 S. Ct. 9, 74 L. Ed. 147.

Plaintiff does not urge with confidence the validity of claims 1 and 2 of patent 1,196,-744. These claims describe the distinguishing nature of the welded structure only in terms of the method by which such structure was made. While a patent may issue for a new and useful article of commerce as well as for the process by which such article is made, it is obvious that the claims must point out and distinctly claim the features constituting novelty and that the method by which the article is produced is not one of such features. Cf. The Wood-Paper Patent, 23 Wall. 566, 593, 23 L. Ed. 31; Cochrane v. Badische Anilin & Soda Fabrik, 111 U. S. 293, 311, 4 S. Ct. 455, 28 L. Ed. 433; Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 254, 48 S. Ct. 474, 72 L. Ed. 868. Entirely apart, therefore, from the question of whether plaintiff's right to a product patent was exhausted or destroyed by the earlier issue of the method patent [Compare Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U. S. 704, 51 S. Ct. 232, 75 L. Ed. 634; Id. (C. C. A.) 37 F.(2d) 830, 836], the claims

of patent No. 1,196,744 here in issue are void for want of proper compliance with Rev. St. § 4888 (title 35, U. S. C. § 33 [35 USCA § 33]).

The decree of the District Court is reversed as to patent 1,066,468, and the cause is remanded, with instructions to enter a decree finding claims 5, 6, 8, 12, and 16 valid and infringed; and said decree of the District Court is affirmed as to claims 1 and 2 of patent 1,196,744. Neither party is awarded costs in this court.

On Petition for Rehearing.

1. Patent to Thomson, No. 347,140, was fully considered by the court, but was regarded as clearly disclosing only mechanism for practicing the resistance method of electric welding and as not anticipatory.

2. We think that no serious misunderstanding arose from whatever inaccuracy there may have been in statement of the difference of arrangement, in the circuit, of the induction coil of the Cooper-Hewitt machine and the condenser of the patent in suit, which statement was based in large part upon the brief of the appellee who now asks a rehearing. We adhere to the opinion that the two devices operate upon different principles.

The petition for rehearing is denied.