## NATIONAL BATTERY CO. v. RICHARDSON CO.

### No. 6092.

Circuit Court of Appeals, Sixth Circuit.

Feb. 17, 1933.

Arthur C. Denison, of Cleveland, Ohio, and William F. Hall, of Washington, D. C., for appellant.

John Weld Peck and Marston Allen, both of Cincinnati, Ohio (Carl Lehmann, Peck, Shaffer & Williams, and Allen & Allen, all of Cincinnati, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

By decree of the District Court, claims 2 and 3 of patent to Lukens, No. 1,752,917, were held valid and infringed. Defendant appeals. The claims in suit are printed in the margin.[1]

It is to be noted that claim 2 is for a composition of matter which is useful principally in the manufacture of molded storage battery containers where it will be subjected to electrolytic action and the effect of acid. Claim 3 is for a molded article of the composition of matter covered by claim 2, to be used under like surroundings. There is no substantial difference between claims 2 and 3, therefore, except that claim 2 limits the quantity of organic fiber to "less than substantially 15% of the mass by weight," while claim 3 also contains an approximate minimum, the language being, "said organic fibre being in proportion of 10% to 15% of the mass by weight." The principal defenses urged are invalidity for lack of invention, and because of insufficiency of disclosure and in claim description.

Prior to Lukens, who was the chemical engineer for the Richardson Company, about 90 per cent. of the storage batteries in use in automobiles were housed in rubber jar, wooden box combinations. Practically all of the other 10 per cent. were housed in one-piece rubber composition boxes that were molded under pressure. The wooden box, rubber jar combination was unsatisfactory. The rubber jars were comparatively thin, and were prone to crack. Where this did not occur the conditions under which the box was used, the heat generated by the automobile engine and by the charging of the battery, the road shocks, and the spilling of acid from the cells, caused the wooden container to disintegrate too quickly. Both types of containers, especially those made wholly of rubber composition, were much more expensive than would have been containers manufactured largely of asphalt or other bitumen, if this could be done. Such asphalt containers must be hard and substantially impervious to the effect of acid and electrolytic action. But the presence of these properties would not be enough. The container must also possess tensile strength. This, then, was the problem which confronted Lukens when he commenced his extensive experimentation about the year 1921.

The prior art had taught how to produce an asphalt compound which had the attribute of hardness. As early as 1875 we find the patent to Tucker, No. 170,132, for an artificial stone produced by combining slag with asphaltum or other bituminous material while in a heated state, and with an animal, vegetable, or mineral fibrous material. This patent may perhaps be properly cited as instructing the art how to secure the desired quality of hardness; but it did not teach how to make a battery box. We also find a number of patents for roofing materials, commencing with the patent to Allman, No. 246,359 (1881), for

---

[1] "2. A composition of matter for the purpose described comprising bitumen intermixed with acid resistant mineral matter in finely divided form, and organic fibre, said organic fibre being less than substantially 15% of the mass by weight, and said organic fibrous material being uniformly dispersed within the bitumen and the individual fibres covered with the bitumen and spaced from each other thereby to an extent comparative to colloidal mixture, and the whole mass molded under high pressure.

"3. A molded article for use in the presence of electrolytic action comprising bitumen with finely divided acid resistant mineral matter and organic fibre, said organic fibre being in proportion of 10% to 15% of the mass by weight, and uniformly dispersed in the bitumen and coated thereby to an extent comparative to colloidal mixture."

a composition of matter consisting of common coal tar, pitch, slate flour, and plasterer's hair, in about the proportions specified, down to the patent to Woodley, No. 1,156,-122 (1915), for a fibrous composition and process of manufacture, the composition of matter consisting of a bituminous binder with the fibrous material distributed substantially uniformly and homogeneously throughout the mass. There are also patents for insulating material or for compositions of matter to be applied to such use. The patent to Fleming, No. 319,084 (1885), employs wood or other vegetable fibrous material, in finely divided condition, desiccated and saturated or impregnated with a mixture consisting of melted bitumen or asphalt incorporated with silicate of magnesia or other silicates. The patent to Conboy, No. 939,982 (1909), is for a composition matter comprising the following ingredients in the proportions named: 30 pounds of asbestos, 30 pounds of tar or pitch, 4 pounds of cotton or equivalent fibrous substance, ½ pound of wax; the composition to be used as a substitute for hard rubber, including its use for electrical insulation.

In respect of the foregoing patents, we think that it is sufficient to say that in none of them did the patentee have in mind the problem which confronted Lukens, nor did any of them teach the art how to secure the combination of tensile strength and resistance to the effect of acids, in the presence of electrolytic action, essential to the production of a useful storage battery container. In connection with Conboy it must be remarked that the usual asbestos of commerce in the United States is the fibrous chrysotile asbestos which is not acid resistant. Conboy teaches nothing in respect of such resistance to acid. It is true that the amphibole asbestos is acid resistant and is a type of asbestos mined in the United States, and that the Conboy claim might therefore read broadly upon a structure employing it; but we do not think that those patents which do not disclose the purpose and means for accomplishing the end of the patent in suit, and which were obviously intended for the accomplishment of a substantially different and limited purpose, can be considered as anticipations. Gordon Form Lathe Co. v. Walcott Machine Co., 32 F.(2d) 55 (C. C. A. 6); N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co., 25 F.(2d) 659 (C. C. A. 6).

What we have already said, we think, applies with increased force when we consider those patents of the prior art which were directed to an acid resistant composition of matter made in part of asphalt. The patent to Huestis, No. 411,124 (1889), is for a battery jar composed of balata as a base, combined with acid-proof material, "as asbestos." Doubtless, since he specifies an acid-proof variety of asbestos as his fibrous material, he may refer to the amphibole variety. The patent to Hall, No. 571,117 (1896) is for a composition of matter consisting of roofing pitch, asbestos, and gum-kauri. Since nothing is said as to the use of amphibole asbestos, which is not the asbestos of commerce, it may reasonably be assumed that the statement in the specification that the composition of matter thus obtained is acid and alkali proof is founded upon the theory of occlusion of the fibers by the asphalt; but this is immaterial. The last patent of this type is that to Altpeter, No. 1,206,076 (1916), for a new composition of matter for roofing and the like, consisting of asbestos, 58 parts; rock asphalt, 20 parts; gum asphalt, 10 parts; and refined tar pitch, 10 parts. This patent is cited chiefly because the specification contains the statement that, "My improved composition of matter herein comprises a fibrous variety of amphibole as a base."

The striking characteristic of these three patents is that seemingly all proceeded upon the assumption that vegetable fiber could not be utilized to give tensile strength to an asphalt composition if the product was to be subjected to corrosive effect of acids, heat, and electrolytic action. These patents we think but the more clearly assist in a determination of the true invention of Lukens. We are also referred to an alleged prior use of a composition of asphalt and African Blue asbestos, which was known to the trade as "Gummite." This African Blue asbestos, while variable in acid resistance, must be conceded to have been partially resistant; but here too we find an absence of all nonresistant vegetable fibers for the purpose of giving tensile strength. In "Gummite," sole reliance was placed upon the fibrous character of the asbestos for the necessary tensile strength, and the prior public use of this material, if there was such prior use, did not serve to point the way for Lukens. In any event, such prior use in the United States does not appear with sufficient clearness.

But, it is urged, the prior art taught the use of vegetable fibers to give tensile strength and the use of a filler of acid resistant mineral to give toughness, hardness, and, if fibrous, an increased tensile strength. So, also, it is said that it was well known in

the art that fibrous material which was not acid resistant might be used to give tensile strength, even in the presence of acid, if used with rubber by which the fibers were wholly occluded. Surely, appellant contends, it could take no more than ordinary mechanical ability by one skilled in the art to include only so much nonresistant fibrous material as could be wholly covered by and inclosed in the asphalt, and, since the mineral filler was to be added in excess of this amount, to make this mineral filler acid resistant. This is said to involve nothing but "cut and try." The fact that all the elements of patentee's composition had formerly been used separately to perform the same or similar functions, or had been used in various other but never the same combinations, will not defeat the patent. Bates v. Coe, 98 U. S. 31, 48, 25 L. Ed. 68; Emery v. George H. Bowman Co., 11 F.(2d) 525 (C. C. A. 6). The question then is whether the new combination would be obvious to one skilled in the art to whom the problem was submitted for solution. Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177.

We do not think that the solution of the problem presented to Lukens was so obvious as is claimed, or that the necessity of extended experiment before he could arrive at the proper proportions, in any way detracts from the quality of invention in his concept. The invention consisted of the mental concept that if an acid resistant mineral filler were used, tensile strength might be secured by the use of a vegetable fiber to a limited, but practically sufficient, extent. This was a departure from the practices of Huestis, Hall, and Altpeter. It went beyond Conboy and Woodley. It was new. Thereafter the inventor might be wholly empirical; but neither this fact, nor the apparent simplicity of his concept, once it had been disclosed, is enough to defeat the inventor's right to a monopoly in the advance which he has really made in the art. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 435, 31 S. Ct. 444, 55 L. Ed. 527. That the step taken was not obvious is almost demonstrated by the failure of others in the same field to accomplish the desired results. Cf. Consolidated Valve Co. v. Crosby Valve Co., 113 U. S. 157, 179, 5 S. Ct. 513, 28 L. Ed. 939. Even after Lukens' container was upon the market and available for chemical analysis, and while the patent application was still pending, apparently competitors of the Richardson Company could duplicate its containers only by "hiring away" Richardson employees, who would divulge the secret of the composition.

Were we in doubt upon this subject, however, the at first prevalent incredulity of the trade, and then the rapidly increasing acceptance and the broad development of the commercial use of such boxes must tip the scales in favor of novelty, utility, and invention. As we said in Gairing Tool Co. v. Eclipse Interchangeable Counterbore Co., 48 F.(2d) 73, 75: "The defendant below has paid it [the patent] the tribute of extremely close, if not absolute, imitation. The need existed for many years, but was not theretofore met. * * * This is indicative of the fact that more than mere mechanical ability was required to conceive the invention and reduce it to practice." Compare, also, W. Bingham Co. v. Walter Ware et al., 46 F.(2d) 33 (C. C. A. 6). In addition to the normal presumption which arises from the granting of a patent, if that presumption means more than that the burden is on the defendant to show invalidity, a question which we do not decide, there is here the circumstance that the claims, after having been repeatedly rejected by the Examiner in the Patent Office, for want of patentability, were finally allowed only upon appeal. Cf. Gairing Tool Co. v. Eclipse Interchangeable Counterbore Co., supra. Whether or not this presumption of validity would also operate with increased force upon the question of the sufficiency of the disclosure and claim description, has no bearing upon its operation in respect of the existence of invention. We are convinced that Lukens made a valuable forward step in the art, that this step involved the exercise of the inventive faculty, and that he should be protected in the enjoyment of this invention in proportion to his contribution. Southern Textile Mach. Co. v. United Hosiery Mills, Corp., 33 F.(2d) 862 (C. C. A. 6), and cases there cited.

Finally, the validity of the claims is attacked on the ground that they are too broad, including, as they do, all acid resistant mineral fillers and all bituminous binders, whereas some minerals such as graphite, and some bitumens such as pitch, would be unsuitable; and upon the further grounds that use of patentee's method of mixing is essential to a practice of the invention and is not claimed, and that the range of temperatures at which such mixing can be practically carried out, and the proportions of the acid resistant mineral and the bitumen to be used, are neither specified nor claimed.

■ We do not think that we are especially concerned with whether Lukens was or was not a "pioneer." A patent for a meritorious improvement, substantially advancing the art, is likewise entitled to a liberal construction. Eibel Process Co. v. Minnesota & O. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. The specification and claims are addressed to those skilled in the art (Id. page 65 of 261 U. S., 43 S. Ct. 322, 329), and the claims should be liberally construed so as to uphold and not destroy the right of the inventor. Westinghouse Elec. & Mfg. Co. v. Quackenbush, 53 F.(2d) 632 (C. C. A. 6); Sun Ray Gas Corp. v. Bellows-Claude Neon Co., 49 F.(2d) 886 (C. C. A. 6). Obviously, the mineral filler was used solely to give hardness and toughness to the mass, and the quantity to be used would depend upon the degree of hardness and toughness desired. The bitumen is used to give cohesiveness to the mass—as a binder. Those skilled in the art cannot be expected to understand the terms used as including those proportions, those minerals, or those bitumens, which would be ineffective to produce the desired results. "That which is, and was understood to be, necessary to make the claim operative, may then be implied therein, provided always, that the description of the claim and specification is sufficient to" enable one skilled in the art, with the specification and claims before him, and without the necessity of further experiment itself of an inventive nature, to practice the invention of the patent. Sun Ray Gas Corp. v. Bellows-Claude Neon Co., supra. This test, we think, has been fully met. Furthermore, it would have been improper to include in a claim for a composition of matter the process by which it was made. Such process is not in any wise descriptive of the finished product. Westinghouse Elec. & Mfg. Co. v. Quackenbush, supra; and compare, Perkins Glue Co. v. Holland Furniture Co. (C. C. A.) 18 F.(2d) 387, 389; Id., 277 U. S. 245, 254, 48 S. Ct. 474, 72 L. Ed. 868.

■ The claim of noninfringement is not, we think, well taken. It is based in large part upon the assumption that inasmuch as the patentee expressed a preference in his patent for an acid resistant mineral filler of amphibole asbestos over the inert earths, the amphibole asbestos having the added advantage of being somewhat fibrous, the diatomaceous earth used by the appellant must be regarded as outside the claim definition of an "acid resistant mineral." Taking into consideration what we conceive to be the essence of the invention of Lukens, its value to the art, and

the consequent liberality with which the patent should be construed, we see no obstacle to his claiming broadly any acid resistant mineral as an element of his combination, especially when, as here, the suitability of the inert earths for such use was recognized and disclosed by the specification, although it was not preferred. The discovery was that vegetable fiber could be used for the desired purpose only in the environment of acid resistant minerals as a class. In this respect the invention was generic, and we see no valid reason why this environment might not be claimed by the broad classification used. In this the situation differs materially from that in Corona Cord Tire Co. v. Dovan Chemical Co., 276 U. S. 358, 48 S. Ct. 380, 72 L. Ed. 610. Compare Incandescent Lamp Patent, 159 U. S. 465, 475, 16 S. Ct. 75, 40 L. Ed. 221. No claim is made for the use of all acid resistant minerals alone, or for the purpose of securing hardness in combination only with bitumen, but the claim is for such use in combination with bitumen and the specified percentage (maximum) of vegetable fiber. So construed, the claims are infringed.

Affirmed.