HANSON–VAN WINKLE–MUNNING CO. v. U. S. GALVANIZING & PLATING EQUIPMENT CORPORATION et al.

No. 2881.

District Court, N. D. New York.

Sept. 8, 1942.

Miller, Hubbell & Evans, of Utica, N. Y., and Toulmin & Toulmin, of Dayton, Ohio (Rowan A. Greer, of Dayton, Ohio, of counsel), for plaintiff.

Ferris, Burgess, Hughes & Dorrance, of Utica, N. Y., and Edwards, Bower & Pool, of New York City (Clifton V. Edwards, Frank A. Bower, Reverdy Johnson, and Harmon S. Potter, all of New York City, of counsel), for U. S. Galvanizing & Plating Equipment Corporation.

Arthur S. Evans, of Rome, N. Y., for Revere Copper & Brass, Inc.

BRYANT, District Judge.

This is an action for infringement of Claim 8 of Letters Patent No. 1,501,946 and Claims 1 and 7, inclusive, of Patent No. 1,896,097. Both patents, referred to as the "Hall" Patents, are for an electro-plating apparatus or automatic conveyor for chemical or electro-chemical operations.

Plaintiff, a New Jersey corporation, through assignment, is the owner of both patents. Defendant U. S. Galvanizing & Plating Equipment Corporation, a West Virginia corporation with its principal place of business in Brooklyn, N. Y., manufactured and sold to defendant Revere Copper and Brass Inc., a Maryland corporation with its principal place of business in this District, the apparatus which plaintiff claims infringes. The only issues are invalidity because of anticipation and non-infringement.

The process of electro-plating is old. Generally there are a series of tanks, in some instances extending along the factory floor as much as 75 feet and varying from 4 to 9 feet in width and depth. The tanks contain different solutions or baths. The articles, being treated, are conveyed by means of carriers through one tank and then lifted and immersed into the next tank where they again are conveyed, etc. At the end of the journey they are unloaded and the carrier sent bank to the starting station. It is helpful, and in some instances necessary and essential, to transfer the treated articles from one tank to the next as speedily as possible in order to avoid oxidation and other deleterious chemical reaction through exposure of the treated articles to the air.

Claim 8 of the first Hall patent, No. 1,501,946, reads as follows: "8. An electro-plating apparatus comprising a work holder for articles to be plated, a conveying mechanism adapted to move said work holder along a tank, and means operable at the delivery end of the tank for disconnecting such work holder from said conveying mechanism, raising the work holder above the tank, and moving the same forwardly into engagement with the conveying mechanism at a speed greater than the

speed of travel of the conveying mechanism."

Plaintiff does not claim that Hall was the first to devise a mechanism to convey plating articles through a tank and, upon reaching the end, to transfer the articles from that tank into the succeeding one. However, it does maintain that, for the first time, through the disclosures of the first Hall patent, there was devised an apparatus that goes through these operations in timed relation with each other so that the transfers are accomplished at a relatively much higher rate of speed. The mechanism and means used to accomplish the above announced objectives are well illustrated in Fig 1. of the patent drawings.

Briefly, the patented device consists of an endless chain arranged to travel around sprocket wheels located at both ends of a series of tanks, this endless chain being located above the tanks or baths. The chain is made up of links, the pins joining the links having extensions. There is a work carrier, from which the articles to be treated are suspended. It is shown clearly in Figs. 3 and 4. It has a projecting shelf located beneath its hooked upper end. This shelf rests upon the endless chain and has an opening into which fits the projecting pins of the endless chain. Thus, as the chain moves from left to right, the work carrier, from which are suspended the immersed articles, is carried along by the movement of the endless chain. As it reaches the delivery end of the tank, the hooked upper end of the work carrier comes in contact with the end of a rotating arm. This rotating arm has, at its contacting end with the work carrier, a roller and the arm is slidably mounted in a rotary block. The hooked portion of the carrier has a slot which fits the end of the rotary arm. This arm, rotating in a clockwise direction, raises the work carrier and carries it upward and then downward for immersion in the next tank. Both the chain and arm are caused to move by the same shaft, which is geared to the operating means of both.

The second Hall patent, No. 1,896,079, supplements and contains improvements over the operation of the first Hall patent. It carries a little further the idea of constructing demountable work carriers so that they can be transferred from one set of conveyors to another in a predetermined sequence of operations. Here, instead of

the hooked work carrier of the first patent, we find a carrier bar or rod. The details of this bar, and the work performed, are sufficiently shown in the patent illustration. Arranged on each side of the tanks, where the partition divides one tank from another, are uprights, which support the transfer conveyors. The transfer is accomplished by a sprocket wheel which drives a moving sprocket and an endless chain carrying dependent socket arms. The speed of this endless chain is much faster than the conveyor chain. As the carrier rod is brought to this transfer movement, by the slow moving conveyor chain, the depending socket arms lift the carrier from the conveyor chains and move it rapidly around the wheel into the succeeding tank. However, the primary object of this patent is a "quick return conveyor". This, it is claimed, saves time and labor through a lessening of the idle period of work carriers and a reduction in the number thereof, thereby increasing the efficiency and effectiveness of the machine. Briefly speaking, the device consists of an endless chain (see Fig. 5) moving from the unloading end upwardly around a sprocket to the top of the apparatus, then horizontally to the loading end and then downwardly to the loading spot. At spaced intervals along this chain are pivotally supported socket arms. As the return conveyor chain comes under the carrier rod at the delivery end of the last tank, it lifts this rod from the slow moving chain and, as in the instance of the transfer mechanism above described, moves it, at high speed, along the chain to the slow moving conveyor chain at the loading end. All movements of the three chains are operated from the same source of power and in timed relation, but, through gearing, at different speeds. Claim 2 of this patent is typical of the claims relied on. It reads: "Apparatus of the character described, comprising in combination a series of work stations for the performance of operations upon work-pieces conveyed thereto, a conveyor traversing the series of work stations, work-piece hangers removably mountable on said conveyor, transfer mechanism for removing each hanger from said conveyor, at a point leaving each work station and returning it to said conveyor at a point entering the succeeding work station, and quick return means for removing each hanger from said conveyor at a point leaving the last work station and returning it to said conveyor at a point approaching

the first work-station, said transfer mechanism and said quick return means being interconnected with said conveyor to operate in timed relation therewith but at a higher rate of travel."

Defendants, in their attack on validity, cited some forty prior patents and uses. Mainly, they are relying on five.

The Hayes and Konig patent, No. 465,700, discloses a machine or apparatus for treating wire in a chemical solution. Manifestly, the problem of oxidation, through exposure to the air, was not present. It has a transfer means to pick up and convey articles from tank to tank, which travels at the same speed as the conveyor chain. The patent discloses an alternate transfer mechanism, a single arm which transfers the work holder from one tank to the succeeding one. This arm must be in position to transfer each work holder on its arrival at the discharge end of the tank. Therefore, it is argued that, as the single transfer arm is governed by the frequency with which such work holder arrives at the discharge end, the speed of the arm must necessarily depend upon the spacing between the work holders; that the transfer arm will rotate slowly if the work holders are widely spaced, but if closely spaced the arm will rotate faster in order to pick up the work holders on more frequent arrivals. Such may be the result, but I fail to find where the patent discloses any such method or result. Difference in speed is not taught by this patent.

The Sealey Patent, No. 1,181,349, relates particularly to a machine for electroplating annular objects such as tire rims. Sealey shows a work holder, conveying means consisting of a chain, attached pushers for moving the same along a tank and a transfer means. The patent specifications, among other things, states: "The speed of travel of this lifter 12 is much greater than the speed of travel of the fingers 35, so as to provide for the contingency mentioned, and also to cut down the time during which the rims are in the air, it being desirable to cut this down as much as possible to avoid the oxidizing action of the air upon the rims." The claims of the patent make no mention of the novelty of greater transfer speed. The construction shows the chain and transfer mechanism geared together. Naturally one would expect both to travel at the same rate of speed. Defendants' expert says that "by calculating the diameter or the relationship of the sprockets and gears shown in Figs. 1 and 2 of the patent one finds that the conveyor chain travels a considerably less distance than would be required to clear the work deposited in the tank". Based on those calculations, he concludes that the transfer arm, if workable, must be geared for faster travel. If the inventor intended that his drawings should make such disclosure, then the same drawings mislead through the spacing of rims on the work carriers. Anyway, the alleged disclosure, so laboriously and adroitly put forth, is not sufficiently described in the patent to support an anticipation claim.

One of the alleged anticipating patents, Taylor No. 1,382,144, is owned by plaintiff. It is the original upon which re-issue patent No. 315,754 was issued. In the original complaint it was listed as one of the patents claimed to be infringed by defendants, but later this claim was dropped. This patent discloses a means for transfer at a greater or less speed than the horizontal movement of the article through the tanks. The conveyor and transfer mechanisms are all independent, and the speed of each can be regulated through choice of gears. One main difference, between the Taylor and Hall construction, is that in the former the conveyor section is stopped while the transfer mechanism is performing its function. The Taylor apparatus does not provide for continuous automatic action, neither does it provide for utilization of the full length of the tank. These shortcomings, coupled with the wholly different means of transfer as disclosed by the two patents, avoid anticipation.

Concededly, the three patents listed do not disclose any quick return conveyor. However, defendants contend that two Potthoff patents, Nos. 1,996,031 and 1,959,799, do contain disclosures which make the second Hall patent invalid.

Defendants, through their own actions, have somewhat weakened this contention. Potthoff, the inventor in both patents, is one of the owners of defendant Galvanizing Company. That defendant is the owner of one or both of the patents. Neither of these patents were pleaded as anticipations and no notice was given as required by statute (35 U.S.C.A. § 69).

Having been received in evidence, they must be given due weight even though the offer, without pleading or notice, has the appearance of a belated effort to bolster a defense. Moreover, defendant Galvanizing Company, in the making of the alleged offending apparatus, follows plaintiff's disclosures much more closely than its own. This, at least, is persuasive on the question of anticipation. Kurtz v. Belle Hat Lining Co., 2 Cir., 280 F. 277-281; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428-431, 31 S.Ct. 444, 55 L.Ed. 527. Aside from these, a study of the patents fails to show anticipation. Potthoff admits that patent 1,959,799 does not have a quick return mechanism. An apparatus made in accordance with patent 1,996,031 might accomplish results similar to those of the patented devices, but it would accomplish them in ways different enough to refute anticipation. A comparison of the claims, specifications and drawings of the patents sufficiently show this.

The alleged infringing device performs the same functions as the patented device and in substantially the same manner. There are only three or four alleged substantial differences in the set up and mechanisms used. In plaintiff's construction there is a slow moving conveyor chain extending from one end of the series of tanks to the other. In the so-called offending device, the chain is made in two parts. They do substantially the same work and obtain substantially the same results as the single chain. The separation of one element in two, when the single and double elements do substantially the same thing, does not evade infringement. In the patented device the carriers rest upon the slow moving conveyor and are pushed along by pusher fingers on the track. In defendants' device the carriers rest upon the track and are pushed along by fingers on the chain. In both we find the same action performed in substantially the same way. There is a difference in the transfer mechanisms. In the alleged offending device, it consists of a rotating arm carrying a V-shaped member to pick up the carrier bar. This differs from the patented device, but if any equivalency is allowed, and there should be even though not a pioneer patent (National Battery Co. v. Richardson Co., 6 Cir., 63 F.2d 289), then the rotating arm appears to be practically the same as the rotating arm of the first Hall patent and the equivalent of the transfer mech-

anism of the second. The principal difference between the "quick return means" is that in defendants' device the carrier, at the unloading end of the tank, is deposited on a rest bracket, where it remains stationary during unloading, and from there it is carried to a similar rest bracket at the loading end, while in the Hall patent the carriers are in motion when loaded and unloaded.

Defendants, instead of following the Potthoff patents and other prior art, have rather studiously, with of course changes, followed the Hall patents to produce an apparatus having a slow moving conveyor chain, a high speed transfer mechanism and a quick return conveyor device all interlocked from a single source of power and in timed relation to each other but at different speeds. The claim of non-infringement must fall.

Plaintiff is entitled to a decree sustaining the validity of claims relied upon and infringement of same.